587 So.2d 455 (1991)
Paul GORMLEY, et al., Petitioners,
v.
GTE PRODUCTS CORPORATION, Respondent.
No. 74861.
Supreme Court of Florida.
October 10, 1991.
*456 Keith A. Truppman of Ress, Mintz & Truppman, P.A., North Miami, for petitioners.
Phillip D. Blackmon of Pyszka, Kessler, Massey, Weldon, Catri, Holton & Douberley, P.A., Sharon L. Wolfe of Cooper, Wolfe & Bolotin, P.A., Miami, for respondent.
Nancy Little Hoffmann of Nancy Little Hoffmann, P.A., Fort Lauderdale, amicus curiae for the Academy of Florida Trial Lawyers.
Michael J. Murphy of Gaebe, Murphy, Mullen & Antonelli, Coral Gables, amicus curiae for Florida Defense Lawyer's Ass'n.
PER CURIAM.
We review Gormley v. GTE Products Corp., 549 So.2d 729 (Fla. 3d DCA 1989), based on conflict with Clark v. Tampa Electric Co., 416 So.2d 475 (Fla. 2d DCA 1982), review denied, 426 So.2d 29 (Fla. 1983), and other cases.[1] We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We *457 quash the decision below and remand for proceedings consistent with this opinion.
The Gormleys' home burned during the night of January 22, 1981, and experts opined that the fire originated in the Gormleys' Philco television set, manufactured by GTE. The Gormleys' $68,700 claim against GTE[2] included both personal injury and property damage. To impeach the claim, an insurance claim document[3] placing property damage at $19,823 was put into evidence by the defendant. The plaintiffs' objection to admission of this document, based on the "collateral source"[4] rule, was denied; the document was sent in with the jury during its deliberations; the jury returned a verdict for the defendant. On appeal the district court reasoned that the error of admitting the insurance document was harmless because the jury found no liability, and, therefore, the improper evidence could not have infected the jury's liability determination. The district court declined to apply its own precedent, announced in Cook v. Eney, 277 So.2d 848 (Fla. 3d DCA), cert. denied, 285 So.2d 414 (Fla. 1973), that admission of evidence of a collateral source to reduce damages is reversible error precisely because it prejudices the jury's determination of liability.
The collateral source rule functions as both a rule of damages and a rule of evidence. See generally 3 Jerome H. Nates et al., Damages in Tort Actions § 17 (1988). As a rule of damages:
The collateral source rule permits an injured party to recover full compensatory damages from a tortfeasor irrespective of the payment of any element of those damages by a source independent of the tortfeasor... . The rule rests on a concept of justice: a tortfeasor should not benefit ... from an injured party's foresight in contracting for protection against injury... .
Id. at 17-5, 17-8.
If the rule were other than what it is, some of the incentive for obtaining insurance might be destroyed. In that case, the losses occurring to plaintiffs who would not protect themselves with adequate insurance would, in many instances, have to be absorbed by society as a whole.
In a real sense, the collateral source rule does not result in a double recovery in this situation because the plaintiff may have paid substantial premiums over a long span of time without ever having received benefits. The costs of premiums may, in fact, far exceed the benefits received.
Id. at 17-8 n.[*]. As a rule of evidence, the collateral source rule prohibits the introduction of any evidence of payments from collateral sources, upon proper objection. Id. at 17-9  17-10.
The collateral source evidentiary rule has been recognized in numerous cases, prohibiting admission of collateral sources in the liability trial. Kreitz v. Thomas, 422 So.2d 1051 (Fla. 4th DCA 1982) (reversible error to admit evidence of workers' compensation benefits in violation of statute); Clark v. Tampa Elec. Co., 416 So.2d 475 (Fla. 2d DCA 1982) (reversible error to admit evidence of plaintiff's income before and after accident; error could not be cured even by repeated instruction), review denied, 426 So.2d 29 (Fla. 1983); Grossman v. Beard, 410 So.2d 175 (Fla. 2d DCA 1982) (reversible error to admit evidence that plaintiff's hospital bill was paid by workers' compensation); Williams v. Pincombe, 309 So.2d 10 (Fla. 4th DCA 1975) (reversible error to admit evidence of plaintiff's receipt of welfare benefits, even for the purpose of impeaching motive to work); Cook v. Eney *458 (admission of collateral source evidence is reversible error on the issue of liability, despite defendant's assertion that it could affect only the issue of damages); Seminole Shell Co. v. Clearwater Flying Co., 156 So.2d 543 (Fla. 2d DCA 1963) (error occurred when defense counsel asked whether plaintiff had been compensated by insurance, despite that it was plaintiff who first mentioned insurance; error could not be cured by instruction at close of case); cf. Sosa v. Knight-Ridder Newspapers Inc., 435 So.2d 821, 825 (Fla. 1983) (new trial approved where "record supports a conclusion that the jurors were influenced by considerations outside the record [workers' compensation benefits] which affected their decision"); Calloway v. Dania Jai Alai Palace, Inc., 560 So.2d 808 (Fla. 4th DCA) (failure of court to give requested collateral source instruction resulted in verdict for less than medical expenses and lost wages; new trial on liability required), review denied, 576 So.2d 285 (Fla. 1990).
These cases reason that introduction of collateral source evidence misleads the jury on the issue of liability and, thus, subverts the jury process. Because a jury's fair assessment of liability is fundamental to justice, its verdict on liability must be free from doubt, based on conviction, and not a function of compromise. Evidence of collateral source benefits may lead the jury to believe that the plaintiff is "trying to obtain a double or triple payment for one injury," Clark, 416 So.2d at 476, or to believe that compensation already received is "sufficient recompense." Kreitz, 422 So.2d at 1052. Despite assertions that collateral source evidence is needed to rebut or impeach, "there generally will be other evidence having more probative value and involving less likelihood of prejudice than the victim's receipt of insurance-type benefits." Williams, 309 So.2d at 11. Such is the case here, where respondent could have introduced its own evidence of the value of property lost in the fire. Respondent also could have asked whether a statement of value in an amount different from the present amount had ever been made. If the fact of such a statement were denied, then a properly redacted claim form could have been placed into evidence. It is the fact that a prior inconsistent statement of value was made, rather than the context in which it was made, that is relevant. Given the various ways of properly rebutting and impeaching evidence, it is error to disclose the irrelevant and prejudicial fact of insurance.
Respondent's reliance on Florida Physician's Insurance Reciprocal v. Stanley, 452 So.2d 514 (Fla. 1984), is misplaced. In Stanley, we held that the collateral source rule did not apply to unearned collateral benefits  free or reduced-cost medical care benefits from a charitable source. We said, "the common-law collateral source rule should be limited to those benefits earned in some way by the plaintiff." Id. at 515. The instant insurance benefits were earned by the Gormleys; they paid for homeowner's insurance.
Respondent argues the verdict form suggests that no prejudice to the liability verdict resulted from the erroneous admission of collateral source evidence  the verdict form separated personal injury damage from property damage. This is factually incorrect. The verdict form presented the following:
1. Was there negligence on the part of Defendant, GTE PRODUCTS CORPORATION, which was a legal cause of damage to Plaintiffs, PAUL GORMLEY and JOSEPHINE GORMLEY?
YES ____ NO ____
2. Did GTE PRODUCTS CORPORATION place the "25-inch Philco Color Television" on the market with a defect which was a legal cause of damage to the Plaintiffs, PAUL GORMLEY and JOSEPHINE GORMLEY?
YES ____ NO ____
If your answers so far are NO, your verdict is for the Defendant and you should not proceed further except to date and sign this verdict form and return it to the courtroom. If your answer to any question so far are [sic] YES, please answer the remaining questions.
The jury answered "no" to both questions. As a result, the jury did not answer *459 subsequent questions on the verdict form that separated each plaintiff's personal injury damage from property damage. Each question answered by the jury refers to both fault (negligence in question 1; product defect in question 2) and damage. The jury well could have concluded that plaintiffs' damage was compensated by insurance, therefore, there was no fault on the part of defendant that "was a legal cause of damage."
Respondent concedes that no statute requires the admission of collateral source benefits in the instant case. Respondent nevertheless argues that because some collateral sources, enumerated and defined by statute,[5] reduce the jury's damage award, therefore collateral source evidence should be admissible generally, subject to a probative-prejudice balancing test. We disagree. The legislature has not required the admission of any collateral source into evidence in the liability trial. It has rather required that some collateral sources shall reduce damages. See §§ 627.7372, 768.50, Fla. Stat. (1985); § 768.76, Fla. Stat. (Supp. 1986). We draw the logical conclusion that the legislature intended neither the admission of privately-obtained insurance benefits into the liability trial, nor the reduction of damages based on these insurance benefits. Here the petitioners paid for insurance against the very loss which occurred. To permit respondent to benefit from this prudent act would result in an unearned windfall to respondent.
The district court placed on the Gormleys the burden of proving that the erroneous admission of collateral source evidence affected the jury's liability determination. Equity and logic demand that the burden of proving such an error harmless must be placed on the party who improperly introduced the evidence. Putting the burden of proof on the party against whom the evidence is used, as the district court did, would simply encourage the introduction of improper evidence. The record in this case shows that the issue of liability was close. We cannot say that the jury's verdict on liability was not improperly influenced by the evidence of the Gormleys' insurance claim. The likelihood of improper influence on the liability issue was not rebutted by the one who introduced the evidence.
We therefore quash the decision below, remand for a new trial on liability and damages, and approve Kreitz, Clark, Grossman, Williams, Cook, and Seminole Shell.
It is so ordered.
SHAW, C.J. and BARKETT and KOGAN, JJ., concur.
GRIMES, J., concurs in result only with an opinion.
McDONALD, J., dissents with an opinion.
OVERTON, J., dissents.
GRIMES, Justice, concurring in result only.
The decision of whether to reverse because of the improper admission of collateral source evidence should be made upon ordinary principles of harmless error without regard to burdens of proof. While the dissenters in the court below appear to advocate a per se rule, I doubt that they would reverse a defendant's verdict on liability in a personal injury action because of evidence that five dollars of the plaintiff's medical bills had been paid by insurance. In the analogous situation in which there had been an erroneous mention of the defendant's insurance policy limits, this Court held that the harmfulness of the error should be evaluated on a case-by-case basis. Josey v. Futch, 254 So.2d 786 (Fla. 1971).
GTE's best argument for harmless error is that the jury found against the Gormleys on their personal injury claims. However, these claims involving smoke inhalation were not significant. The focus of the lawsuit was on the claim for property damage. Because the admission of the insurance claim form reasonably could have caused the jury to believe that the Gormleys' *460 entire property damage claim had been paid by insurance, I cannot say that the error was harmless.
McDONALD, Justice, dissenting.
I dissent. The proof of loss filed by Gormley with the insurance company was used solely to impeach Gormley's evaluation of the amount of damages he had sustained. Its introduction had nothing to do with the separate issue of the defendant's negligence or sale of an unfit product. The jury was properly apprised of and instructed on the issues of both fault and damages. They found no fault. To say that they were adversely influenced in reaching this verdict because one insurance claim in a smaller amount had been filed is pure speculation, unworthy of any inference, and especially of no presumptions, to which the majority ascribes. In effect, the majority decrees that the jury failed to fulfill the oath it took to render a verdict based upon the law and the evidence because it heard prejudicial evidence. I would not do that and would approve the decision of the district court of appeal.
NOTES
[1] Sosa v. Knight-Ridder Newspapers Inc., 435 So.2d 821 (Fla. 1983); Kreitz v. Thomas, 422 So.2d 1051 (Fla. 4th DCA 1982); Grossman v. Beard, 410 So.2d 175 (Fla. 2d DCA 1982); Williams v. Pincombe, 309 So.2d 10 (Fla. 4th DCA 1975); Seminole Shell Co. v. Clearwater Flying Co., 156 So.2d 543 (Fla. 2d DCA 1963).
[2] The Gormleys' claim against their homeowner's insurance company, Old Republic Insurance Company, was settled. This settlement became the subject of a lawsuit based on duress, in which allegedly the Gormleys, who were unrepresented by counsel at the time, were told they would not receive insurance proceeds until they signed the proof-of-loss statement prepared by Old Republic. This lawsuit was settled.
[3] This document was the basis for the Gormleys' lawsuit against Old Republic Insurance Company. See supra note 2.
[4] Compensation from a source wholly independent of the defendant tortfeasor. See Black's Law Dictionary 262 (6th ed. 1990).
[5] See §§ 627.7372, 768.50, Fla. Stat. (1985); § 768.76, Fla. Stat. (Supp. 1986).