591 So.2d 215 (1991)
The WACKENHUT CORPORATION and Delta Airlines, Inc., a foreign corporation, Appellants,
v.
Albert LIPPERT and Felice Lippert, his wife, Appellees.
Nos. 90-0917 and 90-0932.
District Court of Appeal of Florida, Fourth District.
June 12, 1991.
On Motion for Rehearing October 30, 1991.
*216 Bonita L. Kneeland of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for appellant The Wackenhut Corp.
Shelley H. Leinicke of Wicker, Smith, Blomqvist, Tutan, O'Hara, McCoy, Graham & Lane, Fort Lauderdale, for appellant Delta Airlines, Inc.
Joseph D. Farish, Jr., and Kenneth J. Miller of Farish, Farish & Romani, West Palm Beach, for appellees Albert Lippert and Felice Lippert, his wife.
POLEN, Judge.
While on her way to board a Delta Airlines flight from West Palm Beach to New York, the appellee and plaintiff below, Felice Lippert, took a handbag containing approximately $431,000 worth of jewelry through a security checkpoint at Palm Beach International Airport. The security checkpoint was operated by The Wackenhut Corporation which was alleged by the plaintiff to be the agent of Delta. The checkpoint consisted of a magnetometer scan of baggage and other carry-on items as well as a scan of the person which occurs as the person walks through a specially designed archway. Mrs. Lippert placed her bag on the conveyer belt as required and she walked through the archway. The archway magnetometer alarm sounded and Mrs. Lippert was briefly inspected by Wackenhut personnel. After being cleared by Wackenhut, Mrs. Lippert discovered her handbag with the jewelry to be missing.
Mrs. Lippert sued Delta and Wackenhut for the value of her jewelry on a theory of negligence. Delta and Wackenhut asserted Delta's limitations of liability as their affirmative defense. The limitations of liability are expressed by reference on the back of Delta's ticket and in full in a governmentally required tariff which is posted according to federal regulations. The limitation contained in the tariff provides (in pertinent part) that:
J) BAGGAGE LIABILITY
1) a) DL shall be liable for the loss of, damage to, or delay in the delivery of a fare paying passenger's baggage, or other property (including carry on baggage, if tendered to DL's in flight personnel for storage during flight or otherwise delivered into the custody of DL). Such liability, if any, for the loss damage or delay in the delivery of a fare paying passenger's baggage or other property (Whether checked or otherwise delivered in to the custody of DL), shall be limited to an amount equal to the value of the property, plus consequential damages, if any, and shall not exceed the maximum limitation of USD $1250 for all liability for each fare paying passenger (unless the passenger elects to pay for higher liability as provided for in paragraph 3 below). The passenger shall not be automatically entitled to USD $1250 but must prove the value of losses or damages. Actual value for reimbursement of all lost or damaged property shall be determined by the documented original purchase price less any applicable depreciation for prior usage. These limitations also shall apply to baggage or personal property accepted by DL for temporary storage at a city or airport ticket office or elsewhere before or after the passenger's trip.

*217 2) Exclusions From Liability

e) DL is not responsible for jewelry, cash, camera equipment, or other similar valuable items contained in checked or unchecked baggage, unless excess valuation has been purchased. These items should be carried by the passenger.
The limitation of liability for baggage damaged, lost or delayed to $1250 was also clearly stated on the ticket held by Mrs. Lippert. Baggage was defined on that ticket as: "any article or other property of passengers which is acceptable for transportation under the conditions of contract stated herein, whether checked in the cargo compartment or carried in the cabin of the aircraft."
The trial court initially entered partial summary judgment for Delta and Wackenhut, upholding the limitation on liability to the maximum amount of $1250. The trial court found that under Bella Boutique Corp. v. Venezolana Internacional de Aviacion, S.A., 459 So.2d 440 (Fla. 3d DCA 1984), the tariff forms the basis for the contract of carriage and has the force and effect of law. Thus, the trial court found that Mrs. Lippert had delivered her handbag into the custody of Delta through their agents Wackenhut, thereby invoking the limitation on liability.
A new judge was assigned to the case by the time of trial. The trial court, with the second judge presiding, allowed the jury to consider the total amount of damages sustained by the plaintiff and the court further instructed the jury to apportion the damages among the defendants. The judge remarked throughout the trial that he would be bound to enter final judgment in the amount of $1250 at a maximum, notwithstanding what the jury might find. The judge also instructed the jury that the defendants could be held liable for ordinary negligence rather than gross negligence as the defendants had argued.
The jury returned a verdict for the plaintiff in the amount of $431,609, apportioning damages with Delta 65 percent liable and Wackenhut 35 percent liable. After several post-trial motions the trial court, sua sponte, vacated the earlier partial summary judgment and entered final judgment for the plaintiff in the amount of $431,609. The court refused to allow a setoff of this amount or a remittitur despite the fact that Mrs. Lippert recovered $75,000 in insurance proceeds from the loss of a particular pair of earrings which were in the handbag, as well as recovering the earrings themselves in a significantly altered state. The earrings had a trial date value of approximately $40,000.
Delta and Wackenhut appealed the final judgment arguing that the partial summary judgment should have been given its natural effect in limiting liability to $1250. The appellants also argued that the trial court should have either given them the earrings or ordered a set off based on the insurance recovery by Mrs. Lippert. We reverse the final judgment entered by the trial court, and remand for a new trial. We also find, however, that the original partial summary judgment, limiting appellant's liability to $1250, was erroneous.
While the tariff posted by Delta might form the basis for the contract of carriage and have the force and effect of law under Bella Boutique, we find that the limitation of liability contained in the tariff does not apply under the circumstances of this case.[1] The tariff provides that the passenger should carry valuables such as jewelry rather than check such valuables as "baggage." The tariff provides that the passenger is not required to obtain excess value coverage but may elect to do so, thus the passenger can assume sole responsibility for the valuables and is encouraged to do so by the airline.
*218 The problem arises when the passenger must relinquish possession of the valuables upon approaching the magnetometer at the security checkpoint. The passenger then is separated from his or her valuables and it is at this time that a bailment is created. The bailment is obviously for the mutual benefit of the passenger and the airline, and anyone else on or around the airplane or airport for that matter. A bomb exploding the plane or harming other passengers would certainly cause great distress to the airline as well as the passengers who have paid the fare. We are not convinced that the bailment is gratuitous just because federal regulations require the security check to exist. It is for this reason that the trial court was correct in applying the ordinary negligence standard in the case at bar. Armored Car Service Inc. v. First National Bank of Miami, 114 So.2d 431 (Fla. 3d DCA 1959).
At the time of the creation of the bailment the passenger is in a "Catch-22" situation. The tariff has mandated that the valuables be carried and not placed in "baggage" either checked or unchecked. The tariff has immunized the airline from liability for all baggage including carry-on baggage as soon as the items are in the "custody of DL." The ticket provides that baggage is only baggage when it is either checked or carried into the cabin of the aircraft. Now, the airlines and the security companies working for the airlines attempt to assert these conflicting and confusing limitations at the point before the passenger and his or her "baggage" enters the airplane. There is virtually no responsibility placed on the airline or the security companies to act for the protection of the passenger's belongings. This is not acceptable as a matter of law.
The passenger wants to take his or her valuables on a trip somewhere and the passenger knows that if the airline loses or damages the valuables en route then there is a limitation on liability. The appellant argues that in this case the tariff places the limitations on liability at a point before the bags enter the aircraft, thereby absolving the airline's agents of any real responsibility for their own operations. It must be kept in mind that the passenger, in carrying the handbag, is acting in compliance with the provision of the tariff which states that valuables should be carried.
We hold that the tariff and its limitations on liability do not apply where the passenger is forced to relinquish possession of his or her valuables for the purpose of a security magnetometer check. The airline and the security companies must exercise reasonable care in handling the belongings of the passengers who are merely exercising their right to retain possession of such belongings.
In this case Wackenhut was established as the agent of Delta, which remained undisputed throughout the proceedings below. We realize that in other cases security companies may not stand in this relationship but may rather be independent contractors. If any liability is found it should be apportioned accordingly, depending on the facts of each case which will establish the relationships of the parties. In the case at bar the jury was able to apportion damages after finding that the appellants were both negligent in their handling of Mrs. Lippert's handbag, and but for the prejudicial error discussed below, there would be no reason for another trial on this matter.
It appears that the second trial judge vacated the partial summary judgment previously entered by another judge for no particular reason other than his opinion that the order would be appealed from anyway. The second judge misled the appellant throughout the pretrial proceedings and the trial itself by declaring that the judgment could be entered only in the amount of $1250 at most. This disturbs us, and we hold that the appellants were unduly prejudiced in the trial of their cause, by relying on the partial summary judgment (albeit an erroneous one), and the second judge's frequent pronouncements that the $1250 limitation would prevail.
Finally, we find that the trial court erred in failing to take into consideration the insurance recovery and the recovery of the earrings by the plaintiff. Appellees have *219 conceded that appellants are entitled to some offset. The court should have ordered some offset of the final judgment for all or part of the amounts plaintiff recovered from collateral sources. The damages awarded to the plaintiff should be equal to and precisely commensurate with the loss sustained. Hanna v. Martin, 49 So.2d 585 (Fla. 1950). On remand, if appellee prevails on her primary claim, the trial court is instructed to then conduct an evidentiary hearing, and to grant an offset for whatever amount it determines is legally appropriate after considering the evidence and the legal positions of the parties.
The final judgment is reversed and the cause remanded for a new trial, with the proviso that the tariff limitation of liability to $1250 does not apply in this case.
We deem the issues presented in this case to be ones of great public importance, and we therefore certify the following question to the Florida Supreme Court:
WHERE A POSTED TARIFF IN CONJUNCTION WITH THE TICKET FOR CARRIAGE ON A COMMON CARRIER LIMITS LIABILITY FOR CHECKED BAGGAGE OR BAGGAGE ULTIMATELY DELIVERED TO A FLIGHT ATTENDANT FOR STOWAGE IN THE CABIN, BUT THE PASSENGER CHOOSES INSTEAD TO RETAIN CUSTODY OF A PACKAGE, PURSE, HANDBAG, ETC., AND THE PASSENGER IS THEN REQUIRED TO RELINQUISH POSSESSION OF THE ITEM FOR THE PURPOSES OF X-RAY OR OTHER EXAMINATION OR INSPECTION, DOES THE CARRIER'S TARIFF LIMIT ITS LIABILITY, OR THAT OF ITS AGENTS, FOR ORDINARY NEGLIGENCE RESULTING IN LOSS TO THE PASSENGER DURING THE X-RAY OR INSPECTION PROCESS?
ANSTEAD and GARRETT, JJ., concur.

ON MOTION FOR REHEARING
We grant rehearing of our June 12, 1991, opinion in this case only as to the issue of collateral source recovery by the plaintiff and to remove Albert Lippert from the style as indicated by appellee's motion. In all other respects our previous opinion shall remain as previously issued inclusive of the question which we certified to the Supreme Court of Florida.
The Supreme Court of Florida recently decided the case of Gormley v. GTE Products Corp., 587 So.2d 455 (Fla. 1991), in which the issue of collateral source recovery was discussed thoroughly. It is based on the holding of the supreme court in Gormley that we grant rehearing in the case at bar.
We note that the issue of the admissibility of collateral source recovery was not properly preserved for review in the trial court; however, we have before us the issue of the award to the plaintiff which, under the circumstances of the present case, is substantially intertwined with the applicability of the collateral source rule. At the time of the first trial, neither the trial court nor this court had the benefit of the opinion from the supreme court in Gormley and therefore we take this opportunity to instruct the trial court that any evidence of collateral source recovery by the plaintiff is inadmissible for her property loss claim and is per se prejudicial.
The case is remanded for a new trial in accordance with our initial opinion. The trial court is instructed to deal with the issue of collateral source recovery in accordance with this opinion and that of the supreme court in Gormley.
ANSTEAD and GARRETT, JJ., concur.
NOTES
[1] We considered many cases from other jurisdictions including the often cited Tremaroli v. Delta Airlines, 117 Misc.2d 484, 458 N.Y.S.2d 159 (N.Y. Civ. Ct. 1983). All of the foreign cases were distinguishable, some involving the Warsaw Pact which is clearly inapplicable to the case at bar. As for Tremaroli we find it unnecessary to rely on the equivalent of a county court case from New York. We feel that the issues presented herein must be resolved in accordance with Florida law and the use of analogy, while not inappropriate, was less effective in this case than in others due to the disparity between the authorities cited and the circumstances surrounding the instant appeal.