BROWNING, J„
dissenting.
I respectfully dissent.
I.
There was substantial and uncontrovert-ed evidence presented in this case that the appellant, Mary Ann Sheffield (Sheffield), sustained a permanent injury as a result of the accident. Three (3) physicians, Dr. Lopez, Dr. Rigoberto Puente-Guzman,[7] and Dr. Bruce Richards, testified that Sheffield sustained a permanent injury, and no expert testified in opposition. Of particular significance is that the physician retained by Superior Insurance (Superior), Dr. Bruce Richards, to perform an independent medical evaluation of Sheffield, testified that Sheffield suffered injuries that meet the criteria for permanency.
The law in Florida is well recognized that after a party supports its assertions of permanency with expert testimony, the opponent of permanency, to avoid a directed verdict on the issue and have the jury decide the issue, must:
(1) present countervailing expert testimony;
(2) severely impeach the proponent’s expert; or
(3)present other evidence which creates a direct conflict with the proponent’s evidence.
Holmes v. State Farm, 624 So.2d 824 (Fla. 2d DCA 1993). Unless the opponent of permanency satisfies its burden, the opponent’s motion for directed verdict must be granted. Superior failed to do so in the instant appeal, and to the contrary, through its independent medical examiner, Dr. Bruce Richards, actually supported Sheffield’s position. Accordingly, the trial judge should have directed a verdict as requested by Sheffield on this issue.
The majority finds that the trial judge should be affirmed because of the experts’ disagreement as to which of Sheffield’s bodily functions was permanently injured. I do not find this to be compelling or persuasive, and apparently neither does Superior. At page 5 of Superior’s answer brief the sole basis advanced for affir-mance of the trial judge on this point is the following:
Furthermore, the trial court properly denied Appellant’s motion for directed verdict on the issue of permanency, as there was sufficient lay evidence in the form of a surveillance videotape for the jury to reject the expert testimony as to permanency.
(Emphasis added). Moreover, when arguing in the trial court in opposition to Sheffield’s motion for a directed verdict on this issue, Superior advanced as its sole argument the basis stated above. In view of Superior’s position, the majority, by affirming on issues not presented to the trial judge, or briefed by the parties, does violence to the traditional concept of our *539 adversary system, which results in a practical denial of due process of law to Sheffield. She has not been apprised of the basis for the majority opinion previous to receipt of this opinion, nor has she been afforded the right to respond directly to such issue in the trial court or in this court. Simply put, the majority disregards the view of Superior’s counsel on this issue, and injects its view of appropriate trial tactics for Superior, with all of the attendant adverse results that necessarily flow.
The surveillance videotape of Sheffield does not support the trial judge’s denial of her motion for directed verdict on permanency as advanced by Superior. Such evidence does not provide a basis for submitting the issue of permanency to a jury. Jarrell v. Churm, 611 So.2d 69 (Fla. 4th DCA 1992). Moreover, the facts in the instant case are more compelling than those in Jarrell. Dr. Richards, Superior’s independent medical examiner, after testifying that Sheffield had suffered a permanent injury from the accident, testified that nothing on the videotape contradicted what he found on his examination of Sheffield. Thus, the only basis argued by Superior on this issue is not supported by competent substantial evidence and is directly contradicted by its retained independent medical examiner. The trial judge erred by failing to grant a directed verdict on this point.
II.
I also believe that the trial judge reversibly erred by overruling Sheffield’s motion in limine requesting exclusion of all evidence of collateral-source benefits received by her, and by failing to grant Sheffield’s motion for a new trial on the basis of harmless error.
In Gormley v. GTE Products Corp., 587 So.2d 455 (Fla.1991), the Florida Supreme Court unequivocally ruled that introduction of evidence of collateral-source benefits in a liability trial, over objection, is reversible error. The court recognized and pointed out that evidence of collateral-source benefits is inadmissible because such evidence could lead the jury to believe that a plaintiff is attempting to obtain a double or triple recovery, or that the plaintiff has already received sufficient compensation for the injury. Id. at 458. Accordingly, the court held that a trial court’s improper admission of collateral-source evidence, over objection, requires a new trial. Gormley has been followed by other districts, so that when evidence of collateral-source benefits has been admitted, over objection, error has been determined and reversal adjudged, without exception. Parker v. Hoppock, 695 So.2d 424 (Fla. 4th DCA 1997); Wackenhut Corp. v. Lippert, 591 So.2d 215 (Fla. 4th DCA 1991). Even before Gormley, many districts followed the rule promulgated by that opinion. Kreitz v. Thomas, 422 So.2d 1051 (Fla. 4th DCA 1982); Clark v. Tampa Elec. Co., 416 So.2d 475 (Fla. 2d DCA 1982), review denied, 426 So.2d 29 (Fla.1983); Williams v. Pincombe, 309 So.2d 10 (Fla. 4th DCA 1975).
In the instant case, Sheffield’s attorney properly and timely objected to the presentation of any evidence of collateral-source benefits. Notwithstanding that Gormley is a well-known precedent, decided some eight years ago, the trial judge was convinced, apparently by Superior, to admit collateral-source evidence incorrectly. This was error that impels reversal and a new trial for Sheffield.
The majority affirms on this issue because Sheffield is described as having “invited error” and, thus, failed to preserve this point properly for appeal. But this issue was not presented by Superior to the trial court when the motion for new trial was argued and, most significantly, is not argued to this court by Superior. Superi- or’s sole argument is that the trial judge should be affirmed on the basis of harmless error. Superior’s position is stated at page 5 of its answer brief as follows:
The jury awarded the full amount of past medical damages requested by Ap *540 pellant at trial, and any effect of collateral sources on future damages was minimized by Appellant herself. Therefore, because the jury’s verdict was not affected by the admission of evidence of collateral sources, any error in such admission is harmless.
(Emphasis added). The parties stipulated that this issue would not be waived after the trial judge incorrectly denied Sheffield’s motion in limine. If Superior had thought the issue unpreserved for appeal, surely some mention would have been made by it in its brief. The stipulation should be enforced as the parties understand it, and the impact of the error on the trial should be addressed by this court.
When faced with the trial judge’s incorrect ruling, Sheffield had every right to attempt to defuse the issue and initially present collateral-source evidence, as sanctioned by the parties’ stipulation, to the jury. The Third District recognized and explained this principle in Porter v. Vista Building Maintenance Services, Inc., 630 So.2d 205 (Fla. 3d DCA 1993). In Porter, the plaintiff in a slip-and-fall case filed a pre-trial motion in limine seeking to prohibit the defendant from making reference to, or introducing any evidence of, the plaintiffs previous abuse of alcohol. The trial court erroneously denied the motion, and the plaintiffs attorney mentioned his client’s previous alcoholism in his opening statement in an attempt to defuse anticipated prejudice before the evidence was introduced by the defendant. On appeal, the defendant argued that plaintiffs counsel had waived the objection, or else rendered any resulting error harmless by introducing the alcoholism himself. The court pointed out the rule in such circumstances:
[Pjlaintiff s counsel’s attempt to diminish the prejudicial impact of the damaging evidence did not, contrary to appellee’s contentions, waive the error, or render the error harmless. A party cannot be penalized for his good-faith reliance on a trial court’s incorrect ruling. See John Hancock Mut. Life Ins. Co. v. Zalay, 522 So.2d 944 (Fla. 2d DCA 1988) (where evidentiary ruling is subsequently found to be erroneous, litigant must be granted an opportunity to present his case under correct ruling).
Id. at 206.
Significantly, the error in Porter did not involve a principle and precedents as well-defined and recognized as in the instant case. In Porter, rules of elementary evidence were erroneously applied. Here, a landmark decision and numerous other appellate decisions of long standing were ignored, and now such error is affirmed based upon Sheffield’s failure to preserve. It is doubtful that any speaker at a legal seminar held in the past twenty years relating to the subject of an offset for collateral-source benefits under Florida law has failed to include copious references to Gormley and its progeny, or to earlier, similar appellate precedents. Thus, no excuse exists for trying a case on a misapplication of such a universally known and accepted principle of law.
If the admitted error of the trial judge is considered on its impact on the trial rather than on the basis of nonpreservation, the burden of proving that the error was “harmless” is borne by Superior, which induced the trial court to commit reversible error. Gormley, 587 So.2d at 455. Only if Superior demonstrates to this court that the improperly admitted collateral-source evidence clearly was not prejudicial has its burden been met. Beyond doubt, the Florida Supreme Court in Gormley came very close to saying that the admission of collateral-source evidence, over objection, is per se prejudicial. However, the Fourth District, in a ease decided after Gormley and in compliance with it, concluded that such error is “per se prejudicial.” Wackenhut Corp., 591 So.2d at 215.
Superior’s counsel knew, or should have known, of the principle prohibiting admission of evidence of collateral-source benefits. As a result, the cries of harmless error now made should be disallowed on *541 this record. However, the majority finds fault, not with Superior — which created the dispute over evidence of collateral-sources resulting in a misapplication of law by convincing the trial judge to admit clearly inadmissible evidence of collateral-source benefits — but with Sheffield, attempting “two bites at the apple.” No adverse legal consequence is suffered by or allocated to Superior, which required Sheffield to accept an incorrect ruling or attempt to defuse an unfair threat to her case not of her own making. There would have been no necessity to “invite error” by Sheffield had she not been faced with what is now clearly recognized by all parties, the trial judge, and this court, to be error based upon a violation of the Gormley principle. Superior should bear the responsibility for this error, as the precursor of it. Sheffield attempted to bar the inadmissible evidence by timely filing a motion in limine that correctly stated the law. Why should Sheffield bear the onus of an unfair trial of her case for attempting to make the best of a bad situation not of her own making, and for merely defending against inadmissible prejudicial evidence? The obvious answer is that she should not be so required.
While the majority’s concern for not allowing Sheffield to manipulate the legal system to allow “two bites at the apple” is commendable as a general rule, in the context of the instant appeal the “mark is missed.” The majority’s decision will encourage litigants to seek clever misapplications of law to gain an advantage, and then after so doing, if confronted by appeal, admit to error and claim it to be harmless, or claim that the opponent waived the error while struggling within the confines of a patently unfair proceeding. In the instant case, if the error is harmless, why did Superior oppose Sheffield’s motion in limine? The answer is evident: because the admission of evidence of collateral-source benefits was expected to have a “dynamite” impact on the jury favorable to Superior. Such advocacy should not be sanctioned by this court and certainly should not be encouraged, which will be the inescapable effect of the majority’s decision.
Last, but not least, it is interesting to note that the majority cites as authority for its position the following three criminal cases that are not even remotely analogous to the instant case, and overlooks the well-reasoned opinion in Porter, 630 So.2d at 205. Pope v. State, 441 So.2d 1073, 1076 (Fla.1983); Lentz v. State, 679 So.2d 866 (Fla. 3d DCA 1996); Buggs v. State, 640 So.2d 90 (Fla. 1st DCA 1994). Not one of these criminal cases involves a factual situation, as here, where a correct ruling was sought but denied, and Sheffield attempted to deal with the incorrect ruling as best she could.
In summary, Sheffield was denied a fair trial because the principle enunciated by Gormley was not followed, for some unfathomable reason. Sheffield should not be punished for trying to make the best of a situation, not of her own making, that clearly prejudiced her case.
I would reverse and remand for a retrial on damages and instruct the trial judge to grant Sheffield’s motion for directed verdict on permanency.

. The majority publishes as footnote 2 of the opinion a portion of Dr. Rigoberto Puente-Guzman’s general testimony on permanency, but omitted, however, the specific testimony he gave on permanency relating to Sheffield's injuries as follows:
Q. In your opinion, based on reasonable medical certainty, has Ms. Sheffield suffered a permanent injury as a result of that automobile accident?
A. Yes.
[[Image here]]
Q. Treatment regimen that you just described for us, since her injuries are permanent, will that treatment or similar treatment be on a permanent basis as well?
A. Yes.
This testimony does establish that Sheffield suffered a "[pjermanent injury within a reasonable degree of 'medical probability." § 627.737(2)(b), Fla. Stat. (1995).