800 So.2d 197 (2001)
Mary Ann SHEFFIELD, Petitioner,
v.
SUPERIOR INSURANCE COMPANY, Respondent.
No. SC96857.
Supreme Court of Florida.
October 25, 2001.
*198 Teresa Byrd Morgan, Lake City, FL, for Petitioner.
W. Alan Winter, Jacksonville, FL, for Respondent.
PARIENTE, J.
We have for review Sheffield v. Superior Insurance Co., 741 So.2d 533 (Fla. 1st DCA 1999), a decision from the First District Court of Appeal that expressly and *199 directly conflicts with the Third District Court of Appeal's decisions in Smith v. Hooligan's Pub & Oyster Bar, Ltd., 753 So.2d 596 (Fla. 3d DCA 2000), and Porter v. Vista Building Maintenance Services, 630 So.2d 205 (Fla. 3d DCA 1993). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

BACKGROUND
Petitioner Mary Ann Sheffield sustained soft tissue injuries as a passenger in an automobile that was hit from the rear while the vehicle was stopped at a traffic light. See Sheffield, 741 So.2d at 534. After settling with the tortfeasor, Sheffield sued her uninsured motorist insurance carrier, respondent Superior Insurance Company ("Superior"). See id.
Prior to trial, Sheffield filed a motion in limine seeking to exclude collateral source evidence regarding both insurance and other benefits provided by her employer. The trial court denied Sheffield's motion. The parties then stipulated that Sheffield would have a standing objection to the introduction of collateral source evidence and would not have to contemporaneously or spontaneously object during trial in order to preserve the objection for appeal. Thereafter, Sheffield introduced collateral source evidence in her case-in-chief, including the fact that she had group medical insurance to defray some of the costs of treatment.[1]
Although the jury returned a verdict in Sheffield's favor, the jury did not find that Sheffield sustained a permanent injury and only awarded her past medical expenses and $6,554.61 for future medical expenses over a five-year period. After reducing the amount of the verdict with set-offs from collateral sources and the settlement with the tortfeasor, the trial court entered final judgment for Sheffield in the total amount of $4,170.22. Sheffield filed a motion for a new trial on the issue of damages, arguing that the trial court erred in denying her motion for directed verdict on the issue of the permanency of her injuries and that the trial court erred in denying her motion to exclude evidence of collateral sources of recovery. The trial court denied the motion.
Sheffield appealed to the First District, which affirmed the denial of her motion for a new trial, finding that "her own introduction of such [collateral source] evidence precludes reversal for a new trial on that ground." Sheffield, 741 So.2d at 534. The First District reasoned that the trial court's failure to grant the motion in limine did not confer a right on Sheffield to "build error into the trial so as to guarantee two bites at the apple." Id. at 537. The First District explained that Sheffield "invited the error now invoked as a reason for a new trial." Id.
Judge Browning dissented, concluding that Sheffield did not waive any error in light of the stipulation with Superior that Sheffield would have a standing objection to the introduction of collateral source evidence. See id. at 541 (Browning, J., dissenting). Judge Browning also objected to the majority's reliance on the "invited error" reasoning, noting that Superior had never advanced the argument that Sheffield had waived the collateral source issue and that Superior argued only that the introduction of the evidence was harmless error that did not affect the amount of the jury's verdict. See id. at 539-40. In response to the majority position that Sheffield opened the door by introducing the *200 improper evidence herself, the dissenting opinion explained that because Sheffield was faced with the trial court's incorrect ruling, Sheffield "had every right to attempt to defuse the issue and initially present collateral-source evidence." Id. at 540.
Judge Browning analogized the instant case to the Third District's decision in Porter, a case involving the plaintiff's introduction of his previous alcohol abuse after the trial court denied his motion in limine on the matter:
[P]laintiff's counsel's attempt to diminish the prejudicial impact of the damaging evidence did not, contrary to appellee's contentions, waive the error, or render the error harmless. A party cannot be penalized for his good-faith reliance on a trial court's incorrect ruling.
Sheffield, 741 So.2d at 540 (quoting Porter, 630 So.2d at 206). In addition, Judge Browning concluded that because Gormley v. GTE Products Corp., 587 So.2d 455 (Fla.1991),[2] constituted a landmark decision that the trial court ignored, "no excuse exists for trying a case on a misapplication of such a universally known and accepted principle of law." Sheffield, 741 So.2d at 540. Finally, Judge Browning concluded that "[i]f the admitted error of the trial judge is considered on its impact on the trial rather than on the basis of nonpreservation, the burden of proving that the error was `harmless' is borne by Superior, which induced the trial court to commit reversible error." Id. Judge Browning expressed concern that
[t]he majority's decision will encourage litigants to seek clever misapplications of law to gain an advantage, and then after so doing, if confronted by appeal, admit to error and claim it to be harmless, or claim that the opponent waived the error while struggling within the confines of a patently unfair proceeding.
Id. at 541.

DISCUSSION
The First District majority opinion acknowledges, and we agree, that the trial court committed "clear error" in denying Sheffield's motion in limine to exclude the introduction of collateral sources of payment at trial. See Sheffield, 741 So.2d at 536. Upon proper objection, the collateral source rule prohibits the introduction of any evidence of payments from collateral sources. See Gormley, 587 So.2d at 457; § 768.76, Fla. Stat. (2000).[3] Because the subject of Sheffield's motion in limine covered collateral source benefits from her employer, there is no question that the trial court erred in denying Sheffield's motion in limine.
Given this error, the issue before this Court is whether Sheffield's counsel, by introducing collateral source evidence in Sheffield's case-in-chief after the trial *201 court erroneously denied her motion in limine, waived any objection for appellate review. Florida appellate courts are divided on this issue.
In Porter, the plaintiff in a slip-and-fall case filed a pretrial motion to prevent the defendant from introducing evidence concerning the plaintiff's previous alcohol abuse. 630 So.2d at 206. The trial court denied the motion and during opening statement the plaintiff's counsel mentioned plaintiff's prior alcoholism "in an effort to diffuse its impact." Id. The Third District first concluded that the trial court erroneously denied the motion, because there was no dispute that the plaintiff was sober at the time of the injury and the prejudicial effect of the evidence outweighed its probative value. See id. Next, the Third District held that "plaintiff's counsel's attempt to diminish the prejudicial impact of the damaging evidence did not, contrary to [defendant's] contentions, waive the error, or render the error harmless. A party cannot be penalized for his good-faith reliance on a trial court's incorrect ruling." Id.
Subsequently, in Smith, the Third District, in reliance on Porter, held that a party who is wrongfully denied a motion in limine does not "open the door" upon subsequently admitting this evidence in the party's case-in-chief. Smith, 753 So.2d at 599-600. In Smith, the parents of a bar patron, who was shot and killed by another bar patron, brought a wrongful death action against the bar for negligent failure to provide adequate security. Id. at 598. Before trial, the parents moved for a motion in limine to exclude as irrelevant and immaterial all evidence regarding their son's character. See id. The trial court denied the motion and the parents introduced evidence concerning their son's good character. Id. at 599.
On appeal, the parents claimed that the trial court erred in denying the motion in limine. See id. In response, the bar claimed that the introduction of character evidence was appropriate rebuttal to the parents' evidence of their son's good nature, which the parents introduced to prove the measure of their loss. See id. The Third District agreed with the parents' argument, concluding that "Smiths' counsel presented good character testimony in anticipation of [the bar's] bad character evidence and simply attempted to minimize the latter's prejudicial impact." Id. at 600.
In Duffell v. South Walton Emergency Services, Inc., 501 So.2d 1352, 1353 (Fla. 1st DCA 1987), Judge Ervin, in a concurring in part dissenting in part opinion, espoused a similar approach. In Duffell, a personal injury action, the plaintiff sought to exclude evidence of her drug use following her discharge from the hospital. See id. at 1353. The trial court ruled that the defendants could mention the plaintiffs drug use to the jury in the defendant's opening statement. See id. at 1353. Consequently, the plaintiffs counsel alluded to the plaintiffs prescribed drug use during the plaintiff's opening statement, and asked the jury to ignore this evidence as irrelevant to the issue of negligence. See id. The defense, in its opening statement, advised the jury that the plaintiff had a drug problem, and that the problem continued through the accident. See id. The plaintiff contended that the admission of her drug use was prejudicial and constituted grounds for reversal, but the defendant claimed that plaintiff invited the error. See id. at 1357. Although the First District in a per curiam opinion found "no reversible error" occurred,[4]id. at 1352, Judge Ervin explained:

*202 I think it obvious that the conduct of [plaintiff's] trial counsel in making disclosure of his client's drug history was a last desperate attempt to salvage a case that had already been fatally infected by the lower court's rulings and the trial tactics of the [defense's] attorney. It was only after her specific objections to the admissibility of such evidence had been overruled that appellant submitted evidence relating to her drug dependency. By analogy, "the doctrine of waiver does not apply where the appellant makes a proper objection of the matters included in the court's general charge, and when such objection is overruled, necessarily offers an instruction on such matters." 3 Fla. Jur.2d, Appellate Review § 294 at 348-349 (1978). No lawyeras was [plaintiff's] belowshould ever be forced to make such a Hobson's choice: either to go forward with the trial with no reference to his client's drug habits, after nearly all of his objections to clearly prejudicial evidence had been overruled, or, faced with the adverse ruling, to appeal to the jurors' sense of justice and fairness by "telling all", in the hopes that his client's openness and candor would add credibility to the witness's testimony bearing upon disputed factual issues.

Id. at 1358 (emphasis added).
We note, however, that in a case not cited by either party or by the First District, Chenoweth v. Kemp, 396 So.2d 1122, 1125 (Fla.1981), this Court rejected, without any citation or analysis, a finding of trial court error in admitting into evidence the written findings of a mediation panel because the "appellants put the findings before the jury first, by reading the entire mediation panel report in their opening arguments after having been denied a motion in limine. We recognize that this was a tactical decision, but appellants are bound by it." Yet in a cogent dissenting opinion, Justice Sundberg explained:
My colleagues hold that appellant has waived his right to contest the clearly erroneous inclusion in evidence of the actual written finding of the mediation panel because appellant first read the finding to the jury during opening argument. This ignores the fact that in the course of denying appellant's pretrial motion in limine on this subject, the trial judge specifically noted that he was going to allow written finding to be admitted in evidence. In light of this ruling, appellant had every right, and indeed had no choice, but to comment upon the evidence in an attempt to mitigate the damage soon to be done by the erroneous inclusion of the written finding. Trial court error, not tactics, dictated appellant's actions.

Id. at 1127 (Sundberg, C.J., dissenting) (emphasis added). We agree with Justice Sundberg's reasoning.
When a party, after receiving an adverse evidentiary ruling, seeks to minimize its prejudicial impact, the situation is not, contrary to the First District's reasoning, an attempt to get two bites at the apple. The concept of "invited error" does not apply where, as here, the trial court makes an unequivocal ruling admitting evidence over the movant's motion in limine, and the movant subsequently introduces the evidence in an attempt to minimize the prejudicial impact of the evidence. "Under the invited-error doctrine, a party may not make or invite error at trial and then take advantage of the error on appeal." Goodwin v. State, 751 So.2d 537, 544 n. 8 *203 (Fla.1999); see also Terry v. State, 668 So.2d 954, 962 (Fla.1996).
As the Third District has recognized, once the party is faced with the knowledge that the jury will hear the evidence, it is legitimate trial strategy for a party to introduce the evidence at trial in an attempt to mitigate the harm and diffuse the prejudicial impact of the evidence. See Smith, 753 So.2d at 600. In many cases, the only way to attempt to minimize the "dynamite" impact of the adverse evidence will be to question the jury about it in voir dire, discuss it in opening statement, and thereafter introduce the evidence.
We thus agree with Judge Browning's dissenting opinion in this case and with the Third District's decisions in Porter and Smith. We hold that once a trial court makes an unequivocal ruling admitting evidence over a movant's motion in limine, the movant's subsequent introduction of that evidence does not constitute a waiver of the error for appellate review.

THIS CASE
In this case, the trial court denied the motion in limine regarding the collateral source evidence. Sheffield and Superior thereafter entered into a stipulation that Sheffield's introduction of collateral source evidence would not act as a waiver of her objection and that Sheffield would have a standing objection to evidence of collateral sources. We thus conclude that based upon the facts of this case, Sheffield's counsel did not waive the error for appellate review by introducing collateral source evidence after the trial court erroneously denied Sheffield's motion in limine.
Moreover, we agree with Judge Browning that the collateral source evidence introduced in this case was not harmless error. With regard to the introduction of collateral source evidence, this Court held in Gormley that:
Equity and logic demand that the burden of proving such an error harmless must be placed on the party who improperly introduced the evidence. Putting the burden of proof on the party against whom the evidence is used ... would simply encourage the introduction of improper evidence.
587 So.2d at 459. The burden of proving that the admission of the collateral source evidence was harmless rests on Superior. As the Fourth District observed, "when a trial lawyer leads a judge into an obvious error ... cries of harmless error on appeal are likely to fall on deaf ears." Mattek v. White, 695 So.2d 942, 944 (Fla. 4th DCA 1997). Although we did not announce a per se rule of reversal in Gormley, we recognized the inherently damaging effect of the jury hearing collateral source evidence both on the issues of liability and on issues of damages. 587 So.2d at 458; see also Parker v. Hoppock, 695 So.2d 424, 429 (Fla. 4th DCA 1997).
Superior claims that Sheffield minimized any prejudice with regard to future benefits by testifying that there was no guarantee that she would receive collateral source benefits in the future. However, given the inherently prejudicial effect of such evidence, which is the very reason the collateral source rule was first established, we cannot conclude that in this case the introduction of collateral source evidence was harmless. The jury certainly could have concluded that because Sheffield had group insurance available to cover future medical expenses, there would be no need to award substantial damages for the future.
Accordingly, we approve Porter and Smith, recede from Chenoweth to the extent it is inconsistent with this opinion, quash the First District's decision and remand *204 for proceedings consistent with this opinion.[5]
It is so ordered.
WELLS, C.J., and SHAW, ANSTEAD, LEWIS, and QUINCE, JJ., concur.
HARDING, J., dissents with an opinion.
HARDING, J., dissenting.
I respectfully dissent. I would approve the opinion of the First District Court of Appeal in Sheffield v. Superior Insurance Co., 741 So.2d 533 (Fla. 1st DCA 1999).
NOTES
[1] Superior also agreed on the record that Sheffield had not waived her objection by raising the collateral source issue during voir dire and opening statement. See Sheffield, 741 So.2d at 537 n. 6.
[2] The Court in Gormley held that the introduction of collateral source benefits in a liability trial, over objection, constitutes reversible error. 587 So.2d at 458.
[3] The common-law rule prohibited both the introduction of evidence of collateral benefits received and the setoff of any collateral source benefits from the damage award. See Rollins v. Pizzarelli, 761 So.2d 294, 300 (Fla. 2000). The common-law rule has been altered in this State by statute. See § 768.76, Fla. Stat. (2000). Although collateral source evidence may not be introduced before the jury, after entry of the verdict the trial court is required to reduce the amount of damages by the amount of all collateral sources for which no right of subrogation exists. See § 768.76(1), Fla. Stat. (2000). However, because this was a motor vehicle accident, the jury would not award damages for personal injury protection ("PIP") benefits that were paid or payable. See § 627.736(3), Fla. Stat. (2000); see generally Rollins, 761 So.2d at 294.
[4] Because the entire majority opinion consists of the one-line statement that no reversible error occurred, we cannot discern whether the First District majority reached this result because it concluded that the error was not properly preserved or because it concluded that there was no error in the evidentiary ruling regarding the drug history.
[5] Because our quashing of the First District decision will require a new trial, we decline to address the second issue raised by Sheffield and addressed in the First District's opinion, i.e., whether the trial court erred in denying Sheffield's motion for directed verdict on the issue of permanency of injury, which is not a basis for this Court's jurisdiction.