POLEN, J.
Myrna Velilla (“Myrna”), on behalf of her deceased mother Sara Velilla (“Sara”), filed an action alleging that VIP Care Pavilion, an assisted living facility, violated her mother’s rights under the Florida Assisted Living Facility Act. After deliberating for under an hour, a jury ruled in favor of VIP. Myrna raises three arguments on appeal. First, Myrna contends a new trial is warranted due to the erroneous admission of collateral source evidence. Second, she claims VIP improperly shifted the emphasis away from VIP’s violation of her mother’s rights and on to the availability of Medicare to pay for her mother’s care. Last, she asserts the trial court erred in denying her motion to strike the affirmative defense alleging her (Myrna’s) comparative fault. For the reasons expressed below, we agree on all three points and reverse the judgment, remanding for a new trial in accordance with this opinion.
Sara Velilla lived at home with her husband, daughter, and son-in-law prior to being relocated to VIP. She was blind, had diabetes, dementia, Alzheimer’s and other medical issues associated with old age. In March of 2000, her husband and daughter were both hospitalized and the family determined that Sara should be placed in an assisted living facility.
Myrna, Sara’s daughter and health care surrogate, contacted the state who sent her a list of assisted living facilities. Myrna and her husband met with VIP’s director of marketing and activities, Stacey Hamilton. Hamilton explained that VIP was trained to deal with patients like Sara. Hamilton then met with Sara at home to assess her and evaluate whether VIP was appropriate. Hamilton accepted Sara into the facility. Sara moved into VIP on March 14, 2000.
On March 20, 2000 an entry was made in Sara’s chart that read “[rjesident is favoring right hip, right side, continues to ambulate but with one-man assist. Has small bruise on left hand from possible hand stuck in door jamb. Something with the hip. Possible fall and hit wall.” The family was notified of the incident. The family decided not to send her to the hospital, but to have a mobile x-ray done. The x-ray came back negative.
Ms. Parola was the director of nursing at VIP. Parola allegedly called the family and advised them they should put on a private duty nurse who could provide one-on-one care. She explained that a one-on-one nurse would reduce the risk of falls, but not prevent them. Parola testified that the family told her they could not afford that option and that they can barely afford the monthly payment now. Myrna denied that anyone from VIP ever told her that her mother needed that type of care or offered her that option.
On April 8, 2000 another report was made. That report stated that Sara “lost her balance while walking independently in hallway. She fell to the floor on left side. She’s complaining of pain to the right side two to three inches above right knee.... ” *71 The x-ray results, received two days after the fall, indicated Sara had bilateral hip fractures and a broken pelvis. She was brought to the hospital, had surgery, and stayed in the hospital for about a week. After being discharged from the hospital, Sara went to a rehabilitation center. The family was not interested in sending her back to VIP. Sara ended up in a nursing home in North Miami. She never walked after the incident, was bedridden, could no longer feed herself, was totally dependent on others for her care and did not recognize anyone. The Velilla family brought this cause of action alleging that VIP violated Sara Velilla’s statutory rights under section 400,429, Florida Statutes. A jury found no liability on the part of VIP.
Velilla initially seeks reversal based on the admission of collateral source evidence. Velilla contends that the trial court erred in allowing in testimony that Sara was entitled to Medicaid benefits which would help cover the cost of her care.
In Florida Physician’s Insurance Reciprocal v. Stanley, 452 So.2d 514 (Fla.1984), a medical malpractice action, the trial court permitted the admission of evidence that there were free or low-cost charitable and governmental programs available in the community to meet the needs of the plaintiffs injured child. The district court determined the admission of such evidence was error and held that the admission of the evidence violated the collateral source rule. Id. at 515. The Florida Supreme Court disagreed arid ruled that “the collateral source rule should be limited to those benefits earned in some way by the plaintiff. Governmental or charitable benefits available to all citizens, regardless of wealth or status, should be admissible for the jury to consider in determining the reasonable cost of necessary future care.” Id. at 515.
As stated by the Third District, Stanley “modified the collateral source rule to allow admission of evidence of the existence of governmental or charitable health care benefits.” Winston Towers 100 Ass’n, Inc. v. De Carlo, 481 So.2d 1261, 1262 (Fla. 3d DCA 1986).
In Parker v. Hoppock, 695 So.2d 424 (Fla. 4th DCA 1997) this court discussed Stanley. Parker clarified that “[t]he holding in Stanley applies only to testimony concerning benefits available to all citizens regardless of wealth or status and then only on the issue of the reasonable cost of a plaintiffs future medical care.” Id. at 428. The defendants in Parker argued that because the benefits were not paid for or earned by plaintiffs, there was no reason to exclude reference to those benefits from evidence. This court rejected that argument explaining that
[WJhile there is dicta in Stanley that the common-law collateral source rule excluding testimony about benefits received by a plaintiff should be limited to those benefits earned in some way by the plaintiff, the term “collateral sources” has never been limited to those benefits that a plaintiff has earned or paid for.
Id. at 428 (internal citations and quotations omitted).
On appeal, VIP asserts that the evidence was not collateral source evidence, and therefore properly admitted, because it did not address any benefits actually received by Sara Velilla. In Parker, this court specifically rejected this argument. Moreover, Parker emphasized that even if the evidence comes in under the Stanley exception, it is admissible only on the issue of the reasonable cost of a plaintiffs future medical care. The record makes clear, and VIP acknowledges, that the evidence of Medicaid benefits in this case did not go to the issue of Sara Velilla’s future medical *72 care. For that reason we conclude the trial court erred in allowing this testimony to come in.
In Sheffield v. Superior Insurance Co., 800 So.2d 197 (Fla.2001) the court recognized the inherently damaging effect of a jury hearing such evidence. This record does not support a conclusion that this error was harmless. Further, we find no support in the record for VIP’s assertion that the Plaintiff opened the door to this testimony. Therefore, we reverse the order below and remand for a new trial. In so doing, we caution that upon remand there should be no reference to Medicare or Medicaid benefits.
Myrna next alleges that the trial court erred in allowing VIP to interject the financial situation of the Velilla family into the case. Once again, we agree. Appellant relies on Batlemento v. Dove Fountain Inc., 593 So.2d 234 (Fla. 5th DCA 1991). In Batlemento, the Fifth District commented that “[t]he general rule is that during trial no reference should be made to the wealth or poverty of a party.” Id. at 241. In Batlemento the evidence adduced at trial, under the auspices of being relevant to punitive damages, was that the appellee had cashed in insurance policies, mortgaged the home, and basically lost all his money as a result of the alleged fraud. The court concluded that the evidence of the appellee’s financial circumstances was not relevant and held that introduction of such evidence was erroneous. Id. at 242.
This court discussed Batlemento in Sossa v. Newman, 647 So.2d 1018 (Fla. 4th DCA 1994). Sossa is instructive. In Sos-sa, counsel for Defendants stressed the fact that the Plaintiff never returned to any of her medical providers. This court recognized that implicit in this line of argument was the contention that if the Plaintiff did not return to the doctors, then she may not have actually been injured. In order to rebut this contention, Plaintiffs attempted to elicit testimony from the plaintiffs father that the reason Plaintiff did not return for further medical treatment was due to a lack of financial resources. The trial court sustained defense counsel’s objection on relevancy grounds. This court, after acknowledging the general rule discussed in Batlemento, reversed and reasoned as follows:
In the instant case, however, Defendants repeatedly stressed the fact that Plaintiff Ridda never returned to any of her medical providers. In essence, Defendants were arguing that Plaintiff Ridda was not hurt in the instant accident otherwise she would have continued her medical treatment. Thus, by this tactic, Defendants opened the door to the issues of Plaintiffs’ financial ability to continue medical treatment and Plaintiff Ridda’s reason for failing to return to her doctors. See Whiteley v. OKC Corp., 719 F.2d 1051 (10th Cir.1983). Under these limited circumstances, Plaintiffs should have been able to elicit testimony from the father that the reason Plaintiff Ridda did not return to her doctors was due to the family’s financial inability to pay for further medical treatment.
Id. at 1020.
VIP’s director of nursing, Parola, testified that she called the Velilla family and advised them they should put on a private duty nurse who could provide one-on-one care for Sara. According to Parola, the family told her they could not afford that option. This testimony, and any additional testimony that may have come in regarding the financial situation of the Velilla family, violated the general rule discussed in Batlemento.
The case at bar is distinguishable from Sossa. In Sossa, the testimony regarding *73 the financial status of the plaintiff came in to explain the family’s failure to obtain medical care. The case sub judice is not such a case. In this case, the Velilla family did obtain medical care. Sending Sara Velilla to VIP was that care. On remand testimony regarding the financial status of the Velilla’ family should be precluded.
Last, Myrna asserts that the trial court erred in denying her motion to strike VIP’s affirmative defense alleging the comparative fault of Myrna Velilla. This argument is premised on Myrna’s assertion that a statutory enforcement action under section 400.429, Florida Statutes, is not a negligence action in form or substance. We need not address this issue as the record plainly demonstrates there was no negligence on the part of Myrna Velilla in this case. This is not a case where a family member fails to seek medical care. Velilla sought the care of VIP; the issue then is, did VIP provide adequate care.
REVERSED AND REMANDED for a new trial, consistent with this opinion.
STONE, J„ and ROSENBERG, ROBERT A., Associate Judge, concur.