# Supreme Court of Florida

_____

No. SC13-1768
_____

**JOHN JOERG, JR., etc., et al.,**
Petitioners,

vs.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.,**
Respondent.

[October 15, 2015]

LEWIS, J.

Petitioner John Joerg, Jr. (Joerg), on behalf of himself and as the natural father and guardian of his son Luke Joerg (Luke), seeks review of the decision of the Second District Court of Appeal in State Farm Mutual Automobile Insurance Co. v. Joerg, 38 Fla. L. Weekly D1378 (Fla. 2d DCA June 21, 2013), on the ground that it expressly and directly conflicts with the decision in Florida Physician's Insurance Reciprocal v. Stanley, 452 So. 2d 514 (Fla. 1984). We agree that the Second District misapplied Stanley, and we have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

## BACKGROUND

**The Collateral Source Rule**

At common law, the collateral source rule governed both evidence and damages. See, e.g., Gormley v. GTE Prods. Corp., 587 So. 2d 455, 457 (Fla. 1991). Historically, the damages aspect of the collateral source rule prevented the reduction of damages by collateral sources available to the plaintiff. Id. This rule rested on the principle that a tortfeasor should not benefit from the collateral sources available to the plaintiff. Id. However, the Legislature has abrogated the common law damages rule. Today, trial courts must reduce awards "by the total of all amounts which have been paid for the benefit of the claimant, or which are otherwise available to the claimant, from all collateral sources . . . ." § 768.76(1), Fla. Stat. (2014). This statutory modification was intended to reduce insurance costs and prevent plaintiffs from receiving windfalls. See Goble v. Frohman, 901 So. 2d 830, 832 (Fla. 2005); Coop. Leasing, Inc. v. Johnson, 872 So. 2d 956, 959 (Fla. 2d DCA 2004).

There are certain exceptions to this rule. For example, there are no reductions "for collateral sources for which a subrogation or reimbursement right exists." § 768.76(1), Fla. Stat. The statute also explicitly states:

> [B]enefits received under Medicare, or any other federal program providing for a Federal Government lien on or right of reimbursement from the plaintiff's recovery, the Worker's Compensation Law, the Medicaid Program of Title XIX of the Social Security Act or from any medical services program administered by the Department of Health shall not be considered a collateral source.

§768.76(2)(b), Fla. Stat.  This exception does not result in a windfall to plaintiffs because Medicare and similar collateral sources retain a right of subrogation or reimbursement.  See Pollo Ops., Inc. v. Tripp, 906 So. 2d 1101, 1104 n.3 (Fla. 3d DCA 2005); Coop. Leasing, 872 So. 2d at 960.  Additionally, this Court has determined that section 768.76 does not allow reductions for future medical expenses.  Allstate Ins. Co. v. Rudnick, 761 So. 2d 289, 292-93 (Fla. 2000).

As an evidentiary rule, payments from collateral source benefits are not admissible because such evidence may confuse the jury with respect to both liability and damages.  Sheffield v. Superior Ins. Co., 800 So. 2d 197, 203 (Fla. 2001) (citing Gormley, 587 So. 2d at 458).

> [I]ntroduction of collateral source evidence misleads the jury on the issue of liability and, thus, subverts the jury process.  Because a jury's fair assessment of liability is fundamental to justice, its verdict on liability must be free from doubt, based on conviction, and not a function of compromise.  Evidence of collateral source benefits may lead the jury to believe that the plaintiff is trying to obtain a double or triple payment for one injury, . . . or to believe that compensation already received is sufficient recompense.

Gormley, 587 So. 2d at 458 (citing Clark v. Tampa Elec. Co., 416 So. 2d 475, 476 (Fla. 2d DCA 1982); Kreitz v. Thomas, 422 So. 2d 1051, 1052 (Fla. 4th DCA 1982)) (internal quotation marks omitted).  It is also well established in Florida that the admission of evidence of social legislation benefits such as those received from Medicare, Medicaid, or Social Security, is considered highly prejudicial and

constitutes reversible error.  See Sheffield, 800 So. 2d at 203; Velilla v. VIP Care Pavilion Ltd., 861 So. 2d 69, 71 (Fla. 4th DCA 2003) (citing Parker v. Hoppock, 695 So. 2d 424, 428 (Fla. 4th DCA 1997)); see also Benton v. CSX Transp., Inc., 898 So. 2d 243, 245 (Fla. 4th DCA 2005) ("The inadmissibility of collateral sources evidence enjoys a long history of legal precedent." (citing Eichel v. N.Y. Cent. R.R. Co., 375 U.S. 253 (1963))).

Unlike the common law damages aspect of the collateral source rule, the evidentiary collateral source rule remains largely intact.  See Gormley, 587 So. 2d at 459.  The notable exception at issue here is the rule announced by this Court in Stanley.[1]  The plaintiffs in Stanley alleged that the defendants' medical negligence resulted in the intellectual disability and cerebral palsy suffered by their son.  452 So. 2d at 515.  To establish future damages, the plaintiffs presented evidence that their son would require physical therapy, speech therapy, and special education over the course of his life.  The defendants were permitted to introduce evidence of

---

1. Additionally, district courts have noted that evidence of collateral payments may be admitted on a limited basis to rebut a party's theory of a case, establish liability in non-negligence actions, or prevent attempts to mislead the jury.  E.g., Citizens Prop. Ins. Corp. v. Ashe, 50 So. 3d 645, 652-53 (Fla. 1st DCA 2010); Rease v. Anheuser-Busch, Inc., 644 So. 2d 1383, 1387 (Fla. 1st DCA 1994); State Farm Mut. Auto. Ins. Co. v. Gordon, 712 So. 2d 1138, 1139-40 (Fla. 3d DCA 1998).

"free or low-cost charitable and governmental programs available in the community to meet" the needs of the plaintiffs' son. Id. This Court held:

> [E]vidence of free or low cost services from governmental or charitable agencies available to anyone with specific disabilities is admissible on the issue of future damages. . . . Such evidence violates neither the statutory nor the common-law collateral source rule and does not, therefore, require a new trial.
>
> . . . .
>
> We believe that the common-law collateral source rule should be limited to those benefits earned in some way by the plaintiff. Governmental or charitable benefits available to all citizens, regardless of wealth or status, should be admissible for the jury to consider in determining the reasonable cost of necessary future care. Keeping such evidence from the jury may provide an undeserved and unnecessary windfall to the plaintiff.

Id. The Court emphasized that such evidence should not limit how the jury calculates damages:

> The jury remains free to find that the publicly available services do not meet the plaintiff's future needs. The jury may find private care at higher cost more appropriate in some circumstances, but the jury should consider those future services available to all, regardless of wealth or status, when deciding on the proper award of future damages.

Id. at 516.

In support of this holding, the Court relied at that time exclusively upon the only available authority, a decision of the Illinois Supreme Court, which was subsequently quashed:

> [T]he policy behind the collateral-source rule simply is not applicable if the plaintiff has incurred no expense, obligation, or liability in obtaining the services for which he seeks compensation. . . . It is a

well-settled rule of damages that the amount recoverable for tortious personal injuries is not decreased by the fact that the injured party has been wholly or partly indemnified for the loss by proceeds from accident insurance where the tortfeasor did not contribute to the payment of the premiums of such insurance. This rule is usually justified on the basis that the wrongdoer should not benefit from the expenditures made by the injured party in procuring the insurance coverage. . . . In a situation in which the injured party incurs no expense, obligation, or liability, we see no justification for applying the rule.

Id. at 515-16 (citing Peterson v. Lou Bachrodt Chevrolet Co., 392 N.E.2d 1, 5 (Ill. 1979), overruled by Wills v. Foster, 892 N.E.2d 1018 (Ill. 2008)) (internal citations, quotations, and emphasis omitted). In a dissenting opinion, Justice Shaw, joined by Justices Adkins and Boyd, contended that the Court's reliance on Peterson was misplaced. According to Justice Shaw, the Peterson court considered only past damages, not the future damages that were at issue in Stanley. Id. at 517 (Shaw, J., dissenting). He also disagreed with the policy position articulated in Peterson and adopted by the majority of the Court:

There is simply no assurance that public assistance will continue, that the injured victim will continue to be eligible for such assistance if it continues, or that the assistance, if it continues, will continue at the same level. By denying the victim full compensation for the cost of future care, the majority opinion transfers the responsibility for the tort from the tortfeasor, where it legally and morally belongs, to the victim and the community. I cannot agree that an injured victim should be required to seek charity or public aid, or that the compassion of charitable contributors and taxpayers should become a device for reducing the legal liability of a tortfeasor.

Id.

The courts of this state have struggled to apply <u>Stanley</u>. Rather, courts have frequently limited <u>Stanley</u> to its facts and usually concluded that <u>Stanley</u> does not apply. See <u>Gormley</u>, 587 So. 2d at 458 (homeowner's insurance benefits not admissible under <u>Stanley</u> because plaintiffs had paid for them); <u>Nationwide Mut. Fire Ins. Co. v. Harrell</u>, 53 So. 3d 1084, 1087 (Fla. 1st DCA 2010) (concluding that <u>Stanley</u> did not govern the admissibility of payments made by a private health insurer); <u>Weaver v. Wilson</u>, 532 So. 2d 67, 68 (Fla. 1st DCA 1988) (declining to apply <u>Stanley</u> to benefits paid by an employer/parent because such a relationship "create[s] mutual obligations and liabilities, and the benefits paid to an employee or to a child cannot be characterized as 'unearned' in the sense used in <u>Stanley</u>, or as benefits available to all citizens.").

Florida courts have particularly wrestled with whether <u>Stanley</u> requires the admission of Medicare or Medicaid benefits. In <u>Velilla</u>, the Fourth District Court of Appeal reversed and remanded for a new trial after it determined that the admission of past Medicaid benefits was erroneous because of its prejudicial effect. 861 So. 2d at 71-72. The court in <u>Velilla</u> relied on <u>Parker</u>, in which the Fourth District questioned the emphasis that courts have placed on whether such benefits are "free":

> While there is dicta in <u>Stanley</u> that the "common-law collateral source rule [excluding testimony about benefits received by a plaintiff] should be limited to those benefits earned in some way by the

plaintiff," 452 So. 2d at 515, the term "collateral sources" has never been limited to those benefits that a plaintiff has earned or paid for.

Parker, 695 So. 2d at 428 (footnote omitted).[2]  Additionally, past Medicare benefits have been found to be inadmissible under Stanley because the benefits were partially paid for by deductions from the plaintiff's Social Security checks and therefore qualified as an expense or liability under Stanley.  Winston Towers 100 Ass'n, Inc. v. De Carlo, 481 So. 2d 1261, 1262 (Fla. 3d DCA 1986).  But see Velilla, 861 So. 2d at 71 (suggesting that evidence of future Medicare or Medicaid benefits may be admissible under Stanley).  Indeed, until the Second District issued the decision below, no Florida court had definitively concluded that future Medicare benefits are admissible under Stanley.  See Joerg, 38 Fla. L. Weekly at D1378.

## This Case

Luke Joerg is a developmentally disabled adult who has lived with his parents his entire life and has never worked.  As a result of his disabilities, Luke is entitled to reimbursement from Medicare for his medical bills.  On November 19, 2007, Luke was riding his bicycle in Venice, Florida, when he was struck by a car.

_____

2.  Other district courts have disagreed with this position.  See Joerg, 38 Fla. L. Weekly at D1378 n.2; Harrell, 53 So. 3d at 1087 ("[I]t is relatively clear that our supreme court intended to limit abrogation of the evidentiary portion of the collateral source rule to cases where the benefits received to reduce the cost of medical care were not earned (or paid for) in some way by the plaintiff.").

Joerg filed a negligence action against the driver and Respondent State Farm Mutual Automobile Insurance Company (State Farm), Joerg's uninsured motorist carrier. Prior to trial, Joerg withdrew his action against the driver and proceeded against State Farm exclusively.

Joerg filed a motion in limine to exclude evidence of any collateral source benefits to which Luke was entitled, including discounted benefits under Medicare and Medicaid. The trial court initially granted Joerg's motion, but only with respect to past medical bills. After Joerg moved for reconsideration, the trial court vacated its prior ruling and allowed State Farm to introduce evidence of "future medical bills for specific treatment or services that are available . . . to all citizens regardless of their wealth or status." However, it precluded State Farm from introducing evidence of Luke's future Medicare or Medicaid benefits. After a four-day trial, the jury returned a verdict in favor of Joerg. The jury awarded a total of $1,491,875.54 in damages, including $469,076 for future medical expenses.

State Farm appealed to the Second District regarding several evidentiary matters. The Second District affirmed the trial court's rulings on all evidentiary issues without explanation, with the exception of the admissibility of Luke's future Medicare benefits. Joerg, 38 Fla. L. Weekly at D1378. The district court noted that section 768.76, Florida Statutes, which statutorily amended the damages

aspect of the common law collateral source rule two years after the decision in Stanley, left the viability of Stanley in question.  Id. at D1378-79.  However, the court determined that neither the setoff statute nor the decision of this Court in Rudnick, 761 So. 2d at 292-93, which held that future medical payments are not subject to the statutory setoff, altered Stanley.  Joerg, 38 Fla. L. Weekly at D1379.  Therefore, the Second District concluded that, under Stanley, Luke's Medicare benefits were free and unearned and therefore should not have been excluded by the collateral source rule.  Id. at D1379-80.  The district court reversed the award for future damages and remanded for further proceedings.  Id. at D1380.  Review in this Court has followed.

**ANALYSIS**

Whether the exception to the collateral source rule created in Stanley applies to future benefits provided by social legislation such as Medicare is a purely legal question.  Therefore, we review this issue de novo.  See, e.g., Bakerman v. The Bombay Co., 961 So. 2d 259, 261 (Fla. 2007).  The Second District determined that because there was no evidence that Luke paid for his Medicare benefits, these benefits were free and unearned under Stanley.  Not only does this conclusion overlook details contained within the record,[3] but it also ignores the discussion in

_____

3. The record contains no direct evidence in the form of pay stubs, Social Security checks with itemized deductions, or testimony as to Luke's specific benefits, because the trial court excluded such evidence.  There are several

- 10 -

Stanley that collateral sources may qualify as an expense, obligation, or liability to the plaintiff. See 452 So. 2d at 515-16. We conclude that future Medicare benefits are both uncertain and a liability under Stanley, due to the right of reimbursement that Medicare retains.

In 1980, Congress passed the Medicare Secondary Payer Act (MSPA) to reduce Medicare spending. See, e.g., Stalley v. Methodist Healthcare, 517 F.3d 911, 915 (6th Cir. 2008). This statute requires "primary payers," which include automobile insurance plans such as the one Joerg holds with State Farm, to pay for related medical costs for policy holders before Medicare, the "secondary payer," is required to pay. 42 U.S.C. § 1395y(b)(2) (2014); see also Stalley, 517 F.3d at 915. However, Medicare is authorized to make conditional payments in the event that a primary payer "has not made or cannot reasonably be expected to make payment . .

_____

unchallenged arguments that Luke's Social Security benefits were assessed to pay Medicare, and that Medicare retains a right of reimbursement with regard to any resulting settlement. State Farm, as the proponent of the argument that Luke's benefits were free and therefore admissible under Stanley, bore the burden of establishing such. See Weaver, 532 So. 2d at 68 n.2 ("[B]efore a defendant can receive the benefit of the Supreme Court's holding in Stanley, the defendant carries the burden of proof that the plaintiff did not incur an 'expense, obligation, or liability' in obtaining the benefit at issue." (citation omitted)).

This issue arose several times before and during trial. State Farm had ample opportunity to seek further discovery and controvert Joerg's assertion that a portion of Luke's Social Security benefits were assessed to pay Medicare and that his benefits were therefore not free. Our review of the record leads us to conclude that State Farm failed to establish the Medicare benefits here were free. See id.

- 11 -

. promptly." 42 U.S.C. § 1395y(b)(2)(B)(i). As the Eleventh Circuit Court of Appeals has explained:

> The way the system is set up the beneficiary gets the health care [he or] she needs, but Medicare is entitled to reimbursement if and when the primary payer pays [him or] her. Among other avenues of reimbursement, Medicare is subrogated to the beneficiary's right to recover from the primary payer. 42 U.S.C. § 1395y(b)(2)(B)(iii). Medicare regulations extend that subrogation right to any judgments or settlements "related to" injuries for which Medicare paid medical costs, <u>thereby casting the tortfeasor as the primary payer</u>. 42 C.F.R. § 411.37 (2002).

Cochran v. U.S. Health Care Fin. Admin., 291 F.3d 775, 777-78 (11th Cir. 2002) (emphasis supplied).

The Centers for Medicare and Medicaid Services (CMS) may employ several tools to enforce the MSPA. CMS may file an independent cause of action "against any or all entities that are or were required or responsible . . . to make payment . . . under a primary plan." 42 U.S.C. § 1395y(b)(2)(B)(iii). In such actions, the United States may recover double damages. Id. "In addition, the United States may recover under this clause from any entity that has received payment from a primary plan or from the proceeds of a primary plan's payment to any entity." Id. CMS regulations have clarified that "any entity" includes beneficiaries, providers, suppliers, physicians, attorneys, state agencies, and private insurers. 42 C.F.R. § 411.24(g) (2014); U.S. v. Harris, No. 5:08CV102, 2009 WL 891931, at *3, *5 (N.D. W. Va. Mar. 26, 2009) (awarding judgment to the United

States against a plaintiff's attorney to satisfy the government's subrogation claim), aff'd, 334 Fed. Appx. 569 (4th Cir. 2009). Finally, liability insurers with claims submitted by Medicare beneficiaries must report such claims, along with any related settlements, to the Department of Health and Human Services. Medicare, Medicaid, and SCHIP Extension Act of 2007, Pub. L. 110-173 (2007) (codified as amended at 42 U.S.C. §1395y(b)(8)). Failure to comply with the reporting requirement results in a $1,000 per day, per claim civil penalty. See id.; see also generally Jason D. Lazarus, Medicare Myths: What Every Trial Lawyer Should Know About the MSP and Liability Medicare Set Asides, Fla. B.J., Nov. 2010, at 46. These tools apply regardless of the basis of the beneficiary's eligibility for Medicare. See 44 C.F.R. § 411.20 (subtitled "Insurance Coverage That Limits Medicare Payment: General Provisions").

With such enforcement tools, future Medicare benefits constitute a serious liability for all beneficiaries. See Black's Law Dictionary 1053 (10th ed. 2014) (defining liability as either "1. The quality, state, or condition of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment . . . ." or "2. A financial or pecuniary obligation in a specific amount."). Regardless of whether an individual has directly paid for his or her Medicare benefits, a factual matter which is unclear from the record before this Court, all Medicare beneficiaries who receive an award

- 13 -

for future medical damages will be liable to reimburse Medicare, if Medicare makes a conditional payment on their behalf.  Therefore, the assertion by State Farm that any Medicare and Medicaid benefits provided to Luke are free and admissible under Stanley is unsupported under the law.

Moreover, CMS's ability to enforce the right of reimbursement of Medicare benefits makes it apparent that the exclusion of evidence of Medicare and similar collateral source benefits will not result in undue windfalls to plaintiffs such as Joerg.  Florida courts have recognized that the exemption for Medicare in the collateral source damages statute does not create undue windfalls for plaintiffs. Pollo Ops., Inc., 906 So. 2d at 1104 n.3 (explaining that the exclusion of Medicare benefits from the definition of statutory collateral sources exists because of the right of reimbursement retained by the federal government); Coop. Leasing, 872 So. 2d at 960 ("Section 768.76 excludes Medicare benefits as a collateral source because the federal government has a right to reimbursement from Johnson's recovery for payments it has made on her behalf."); cf. Gormley, 587 So. 2d at 457 (noting that the collateral source rule does not provide a double recovery to plaintiffs who have personally paid for their benefits).  Thus, the dual functions of the collateral source rule are to be harmonized: although evidence that may confuse the jury as to both liability and damages should not be admitted, Sheffield, 800 So. 2d at 203, any potential windfalls to the plaintiff that might occur through

- 14 -

the exclusion of such evidence are minimized by judicial reductions to the damage award by any collateral source, which occurs outside of the jury's presence. § 768.76, Fla. Stat.[4] No windfalls result when an entity that provided the collateral source retains a right of reimbursement from the award of damages.

Additional policy concerns support our conclusion today. First, our holding is consistent with the recognition of the inherently prejudicial effect of evidence of collateral source benefits. See Eichel, 375 U.S. at 255 (explaining that the prejudicial value of the admission of collateral source benefits available under a federal statute outweighed the probative value of the evidence to demonstrate malingering by the plaintiff); Sheffield, 800 So. 2d at 203-04 (citing Gormley, 587

_____

4. We also reject the cramped interpretation of the Second District regarding future setoffs under section 768.76. Section 768.76 requires a judge to set off the value of most collateral source benefits from a damages award; however, the statute excludes benefits received under Medicare or programs with a right of reimbursement from the definition of collateral sources for the purpose of the setoff statute. § 768.76, Fla. Stat. The district court below concluded that section 768.76(2)(b) creates an exception only for previously earned Medicare benefits, not for future unearned benefits. Joerg, 38 Fla. L. Weekly at D1379. However, in Rudnick, we held that although benefits that have been received by the plaintiff must be set off against an award for damages, future collateral benefits are not subject to setoff. 761 So. 2d at 292-93; see also White v. Westlund, 624 So. 2d 1148, 1153 (Fla. 4th DCA 1993) ("Florida courts . . . have implicitly, if not expressly, held that future earned disability benefits cannot be set off from an award as a collateral source under section 768.76." (citations omitted)); Swamy v. Hodges, 583 So. 2d 1095, 1096-97 (Fla. 1st DCA 1991) (affirming the refusal of a trial court to grant a setoff for future Social Security benefits); Measom v. Rainbow Connection Preschool, Inc., 568 So. 2d 123, 124 (Fla. 5th DCA 1990) (reversing a setoff for future medical expenses under section 768.76(1)).

- 15 -

So. 2d at 458). Evidence of eligibility for Medicare, Medicaid, welfare, and similar social legislation benefits may have an even greater prejudicial impact on juries. E.g., Parker, 695 So. 2d at 428 ("The very image of a plaintiff as one who accepts governmental hand-outs carries a substantial likelihood of prejudice that outweighs any marginal probative value.").

Moreover, it is absolutely speculative to attempt to calculate damage awards based on benefits that a plaintiff has not yet received and may never receive, should either the plaintiff's eligibility or the benefits themselves become insufficient or cease to continue. Even where very particular benefits exist, extensive waiting lists may prevent an individual from actually receiving the benefit.[5] The continued existence and sufficient funding of public services depend upon legislative action, which is by no means a predictable matter: "To encourage juries to mitigate damages based on tenuous public resources forces plaintiffs, like the foolish house builder in the parable, to rebuild lives on shifting sands. The floods may come, and the winds blow, and great will be the fall." Cates v. Wilson, 361 S.E.2d 734, 739 (N.C. 1987).[6] In cases that involve presumptive Medicare

        5. For example, the Agency for Persons with Disabilities maintains an extensive waiting list for services available to individuals with particular disabilities. See § 393.065, Fla. Stat. (2014). Some never receive the benefits which otherwise appear to be available in theory only.

        6. Although the court in Cates considered a variety of collateral source benefits, including free special education such as was at issue in Stanley, the North

reimbursements, it is even more speculative to anticipate a reduction of future damages because the structure of the MSPA is intended to prevent Medicare from paying if there is forthcoming payment from a primary payer.  See Cochran, 291 F.3d at 777-78.

Finally, to consider Medicare, Medicaid, and other similar social legislation benefits as exceptions to the general rule that precludes admission of collateral sources circumvents the purpose of the collateral source rule.  It is a basic principle of law that tortfeasors should not receive a windfall due to benefits available to the injured party, however those benefits were accrued.  See Restatement (Second) of Torts § 920A cmt. b (1979) ("The law does not differentiate between the nature of the benefits, so long as they did not come from the defendant or a person acting for him."); see also Gormley, 587 So. 2d at 457 ("The collateral source rule permits an injured party to recover full compensatory damages from a tortfeasor irrespective of the payment of any element of those damages by a source independent of the tortfeasor."  (citing 3 Jerome H. Nates et al., Damages in Tort Actions § 17-5 (1988)) (emphasis supplied)).  We now agree with the dissent in Stanley that tortfeasors—and here, those who insure against the actions of tortfeasors—should

Carolina Supreme Court ultimately held that the admission of Medicaid and state welfare benefits and child support payments alone required a new trial.  Cates, 361 S.E.2d at 737, 739.

not enjoy such a windfall at the expense of taxpayers who fund social legislation benefits.

At this point, we recognize the need to recede from our previous position articulated in Stanley. As discussed, no court of this state has successfully applied Stanley. Moreover, Stanley has become the minority rule in this country. See Wills, 892 N.E.2d at 1023; Restatement (Second) of Torts § 920A cmt. c (4) (noting that social legislation benefits are subject to the collateral source rule of damages). We also consider it noteworthy that Peterson, the decision relied upon extensively and exclusively for support in Stanley, has recently been overruled. Wills, 892 N.E.2d at 1031. We need not repeat the thorough and persuasive analysis provided by the Illinois Supreme Court here, other than to agree that the tortfeasor should not benefit from collateral funds that are available to the injured party and wholly independent of the tortfeasor. See id. at 1023-31.[7] Therefore, we recede from Stanley to the extent that it supported the admission of social legislation benefits as an exception to the evidentiary collateral source rule. Stanley was a very narrow exception to the collateral source rule that considered specific benefits, which in that case included special needs education and therapy,

_____

7. Like Peterson, the Illinois Supreme Court in Wills also considered the admissibility of past Medicare benefits, not the future benefits at issue here. Wills, 892 N.E.2d at 1020. Given our agreement with the policy pronouncement in Wills, we do not consider this factual distinction relevant.

which can no longer be supported. It was never intended to apply to benefits from Medicare or Medicaid, or to collateral sources where a right of reimbursement or subrogation exists, because such rights necessarily complicate the freely available nature of the benefits that were at issue in Stanley. Further, the uncertainty of the future for any social legislation benefits is far too great to permit damage reductions.

## CONCLUSION

To affirm the decision below would result in a new trial in which State Farm would be permitted to present confusing, prejudicial, and speculative evidence of Luke Joerg's future entitlement to Medicare benefits, when State Farm would not otherwise be permitted to seek a reduction of the value of these benefits from any award Joerg might receive. This we cannot allow. We conclude that the trial court properly excluded evidence of Luke Joerg's eligibility for future benefits from Medicare, Medicaid, and other social legislation as collateral sources. We therefore quash the decision below and remand for further proceedings consistent with this opinion.

It is so ordered.

LABARGA, C.J., and PARIENTE, QUINCE, and PERRY, JJ., concur.
POLSTON, J., dissents with an opinion, in which CANADY, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

POLSTON, J., dissenting.

This Court does not have the constitutional authority to review this case because the Second District's decision in State Farm Mutual Automobile Insurance Co. v. Joerg, 38 Fla. L. Weekly D1378 (Fla. 2d DCA June 21, 2013), does not expressly and directly conflict with this Court's decision in Florida Physician's Insurance Reciprocal v. Stanley, 452 So. 2d 514 (Fla. 1984), on the same question of law. See, art. V, § 3(b)(3), Fla. Const.

In Stanley, 452 So. 2d at 515, this Court held that "evidence of free or low cost services from governmental or charitable agencies available to anyone with specific disabilities is admissible on the issue of future damages." This Court in Stanley stated that "the common-law collateral source rule should be limited to those benefits earned in some way by the plaintiff. Governmental or charitable benefits available to all citizens, regardless of wealth or status, should be admissible for the jury to consider in determining the reasonable cost of necessary future care." Id. Relying on this Court's decision in Stanley, the Second District held that Joerg's receipt of medical services from Medicare is admissible to determine future damages because Joerg did not contribute to or pay for the Medicare benefits. Joerg, 38 Fla. L. Weekly at D1379. Specifically, the Second District explained that "[n]o record evidence shows that Joerg contributed to the financing of the Medicare program;" therefore, Joerg's Medicare benefits "are

- 20 -

unearned under <u>Stanley</u> and not subject to exclusion under the collateral source rule." <u>Id.</u> at D1379-80. Accordingly, because both this Court in <u>Stanley</u> and the Second District in <u>Joerg</u> concluded that only government benefits earned in some way by the plaintiff should be excluded from evidence under the collateral source rule, no conflict exists.

I respectfully dissent.

CANADY, J., concurs.

Application for Review of the Decision of the District Court of Appeal - Direct Conflict of Decisions

Second District - Case Nos. 2D11-6229 & 2D12-1246

(Sarasota County)

Tracy Raffles Gunn of Gunn Appellate Practice P.A., Tampa, Florida,

for Petitioners

Mark David Tinker and Charles William Hall of Banker Lopez Gassler P.A., Saint Petersburg, Florida,

for Respondent

Mark Kenneth Delegal and Matthew Harrison Mears of Holland & Knight LLP, Tallahassee, Florida, and William Wells Large, Florida Justice Reform Institute, Tallahassee, Florida,

for Amicus Curiae Florida Justice Reform Institute

Philip Mead Burlington and Nichole Johnston Segal of Burlington & Rockenbach, P.A., West Palm Beach, Florida,

for Amicus Curiae Florida Justice Association

Maria Elena Abate and Charlyne Michelle Patterson of Colodny, Fass, Talenfeld, Karlinsky, Abate & Webb, P.A., Fort Lauderdale, Florida,

for Amici Curiae Property Casualty Insurers Association of America and National Association of Mutual Insurance Companies