DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JEANNE UY GO, M.D.,**
Appellant,

v.

**FEDELINE NORMIL,** individually, and as Parent and Natural Guardian
of **DENS PIERRE,** a minor, **BETHESDA MEMORIAL HOSPITAL, INC.,**
**LATHA SRINATH, M.D., MARIA D. ALVA, M.D.,** and **KIDZ MEDICAL**
**SERVICES, INC.,**
Appellees.

No. 4D13-88

[January 6, 2016]

Appeal and cross-appeal from the Circuit Court for the Fifteenth
Judicial Circuit, Palm Beach County; David E. French, Judge; L.T. Case
No. 502008CA026517XXXXMB.

Adam D. Farber, Boynton Beach, and Marjorie Gadarian Graham of
Marjorie Gadarian Graham, P.A., Palm Beach Gardens (withdrawn as
counsel after filing brief), for appellant/cross-appellee.

Armando T. Lauritano of Morgan & Morgan, P.A., Tampa, and Philip M.
Burlington, Andrew A. Harris, Nichole J. Segal, and Adam J. Richardson
of Burlington & Rockenbach, P.A., West Palm Beach, for appellees/cross-
appellants.

FORST, J.

Appellant Dr. Jeanne Go and a colleague were sued for medical
malpractice stemming from their treatment of Dens Pierre ("the Child"),
which resulted in a brain injury to the Child. A jury found Appellant
seventy-five percent liable for the damages sustained by the Child and
awarded the Child and his mother ("the Mother") roughly $28.5 million in
damages. However, this award was reduced by the trial court pursuant to
section 766.118, Florida Statutes (2012). Appellant now appeals, while
the Child and the Mother cross-appeal. We reject Appellant's arguments
on appeal. Moreover, in light of recent decisions concerning section
766.118, we agree with the position raised in the cross-appeal;
accordingly, we reverse with respect to the trial court's reduction of the

damages award.

## Background

The Child was admitted to Bethesda Hospital in Boynton Beach in August 2006. The Child presented with a high fever, vomiting, and a stiff neck. Appellant and a colleague were both responsible for the Child's care. After two weeks of treatment at Bethesda Hospital, the Child's condition worsened and he was transferred to Miami Children's Hospital. Upon arrival at Miami Children's, it was determined that the Child had suffered a stroke. The physicians at Miami Children's ran additional tests, which indicated the presence of both herpes and Epstein-Barr viruses. An expert witness testified that "more likely than not this child . . . would not have suffered a stroke if the initial herpetic infection was treated earlier."

Although the Child's physical development was largely unaffected by the stroke, the Child's neurological and behavioral development was severely impacted. The plaintiff introduced testimony that the Child is unable to communicate or follow directions, engages in self-injurious behaviors, suffers from morbid obesity and an insatiable appetite, and has little to no awareness for his own safety such that he requires constant supervision. A witness also opined that the Child has "a total disability that is permanent" and that he would be unable to ever live independently.

The jury returned a verdict in favor of the Child and the Mother, finding Appellant to be seventy-five percent liable for the Child's injuries. The jury awarded the Child $16,450,104.74 in economic damages, including $2,173,500 for medical care until the Child's eighteenth birthday and $13,395,300 for care thereafter. The jury also awarded $6 million each to both the Child and the Mother for past and future noneconomic damages. In light of the statutory cap on medical malpractice noneconomic damages, the trial court limited the noneconomic damage award to $500,000 per claimant and entered a final judgment reflecting this change.

## Analysis

### I.    Issues Raised by Appellant

Appellant raises three issues on appeal, arguing that: (1) the trial court erred by excluding evidence pertaining to free or low-cost medical care available to the Child; (2) the trial court erred by denying Appellant's request for a post-verdict juror interview and her request for new trial; and (3) the trial court erred by denying Appellant's motion for a continuance. We will address the first issue and affirm the trial court's decision on the

2

other two issues without further comment.

At trial, Appellant sought to introduce testimony that the Child's future medical expenses would be lowered significantly based on free or low-cost medical care provided by the State of New York, where the Child now resides. The plaintiffs initially argued against admitting any reference to Medicaid or Medicare payments for past or future medical costs. The trial court ruled that, under *Florida Physician's Insurance Reciprocal v. Stanley*, 452 So. 2d 514 (Fla. 1984), evidence of governmental or charitable benefits was admissible on the issue of future damages as an exception to the collateral source rule, provided they were available to all citizens regardless of wealth.

Appellant's expert testified that the Child had access to free attendant care and therapy through his public school until he turned twenty-two. The expert testified that the Child would have access to customizable residential programs with nursing care and supervision at no cost to the Mother. The expert stated that there are no private pay facilities available to disabled persons, but later changed course and said "some of them are private. But they accept governmental reimbursement." The witness further explained that the resources available to the Child or the Mother would not affect his admission into the programs about which she was testifying. Upon further questioning, the witness stated that the facility she was referring to charged Medicaid for its patients' care and in order to get into the facility, the Child would need to qualify for Medicaid because "none of these places take private pay." The witness stated that the costs would be paid by Medicaid but Medicaid would need to be reimbursed. The trial court struck the witness's earlier testimony and precluded further discussion of these programs because "that's not a charity . . . it is a private-payer situation that is paid for by Medicaid, which means - which is specifically inadmissible according to the *Stanley* case and so forth."

"The collateral source rule functions as both a rule of damages and a rule of evidence," allowing a plaintiff to recover full compensatory damages despite any compensation obtained from a source other than the tortfeasor and prohibiting the introduction of evidence of such collateral payments. *Gormley v. GTE Prods. Corp.*, 587 So. 2d 455, 457 (Fla. 1991). Florida courts have reasoned that "introduction of collateral source evidence misleads the jury on the issue of liability," as it may lead the jury to assume that a party already has been adequately compensated for his or her injury or that a plaintiff is seeking an undeserved windfall. *Id.* at 458.

The Florida Supreme Court carved out an exception to this general rule in *Stanley*. In that case, a child and his parents brought a medical

malpractice action to recover for the child's mental handicaps.  *Stanley*, 452 So. 2d at 515.  At trial, the plaintiffs presented evidence as to the expected cost of therapy the child would need.  *Id.*  The trial court allowed the defendants to cross-examine the plaintiffs' witnesses about the availability of free or low-cost charitable and/or governmental programs available to the child.  *Id.*  The First DCA reversed, holding that evidence of the available charitable or governmental care violated the collateral source rule.  *Id.*

The Florida Supreme Court, in turn, reversed the First DCA, holding:

> We believe that the common-law collateral source rule should be limited to those benefits earned in some way by the plaintiff.  Governmental or charitable benefits available to all citizens, regardless of wealth or status, should be admissible for the jury to consider in determining the reasonable cost of necessary future care.

*Id.*  The Court echoed the logic of the Illinois Supreme Court that "[T]he policy behind the collateral-source rule simply is not applicable if the plaintiff has incurred no expense, obligation, or liability in obtaining the services for which he seeks compensation." *Id.* (quoting *Peterson v. Lou Bachrodt Chevrolet Co.,* 392 N.E.2d 1, 5 (1979)).

Recently, the Florida Supreme Court has receded from its opinion in *Stanley.*  In *Joerg v. State Farm Mutual Automobile Insurance Co.,* 40 Fla. L. Weekly S553 (Fla. Oct. 15, 2015), a disabled adult was struck by a car while riding his bicycle.  *Id.* at S555.  The man's parents brought an action against State Farm, the insurer of the driver.  *Id.*  The trial court allowed State Farm to introduce evidence of "future medical bills for specific treatment or services that are available . . . to all citizens regardless of their wealth or status." *Id.*  However, it precluded State Farm from introducing evidence of the victim's future Medicare or Medicaid benefits.  *Id.*  The Second DCA, however, "concluded that, under *Stanley . . .* Medicare benefits were free and unearned and therefore should not have been excluded by the collateral source rule." *Id.*

The Supreme Court reversed the Second DCA and held that evidence of future benefits from Medicare or Medicaid is inadmissible as collateral sources.  *Id.*  The Court reasoned that the right of reimbursement meant that these government programs were not free and/or unearned.  *Id.* at S555-56.  The Court further noted the future availability of such programs is speculative and that allowing tortfeasors to introduce evidence of payments from these governmental programs would allow them a windfall.

4

*Id.* at S556. While we believe the trial court properly barred evidence of benefits under the test espoused in *Stanley,* the Florida Supreme Court's opinion in *Joerg* provides further support for the conclusion that the trial court properly excluded this evidence.

## II. Issue Raised by Mother and Child

The Mother and the Child also appeal the final judgment, arguing the caps on noneconomic damages found in section 776.118(2) are unconstitutional. We recently decided this issue in *North Broward Hospital District v. Kalitan,* 174 So. 3d 403 (Fla. 4th DCA 2015). In that case, we held that, based on the Florida Supreme Court's decision in *Estate of McCall v. United States,* 134 So. 3d 894 (Fla. 2014), "the section 766.118 caps are unconstitutional not only in wrongful death actions, but also in personal injury suits as they violate equal protection." *Kalitan,* 174 So. 3d at 411. Under the principle of *stare decisis* and the mandate of *McCall,* we again hold that these caps are unconstitutional.

## Conclusion

We reject Appellant's arguments on appeal. Additionally, we reverse with respect to the cross-appeal. Per *McCall* and *Kalitan,* the caps on noneconomic damages, found in section 766.118(2), are unconstitutional and should not have been applied. On remand, the trial court must amend the final judgment to reflect the full amount of noneconomic damages awarded by the jury.

*Reversed and remanded.*

WARNER and TAYLOR, JJ., concur.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***

5