IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

JORDON J. RASINSKI,

        Appellant,

 v.

MICHAEL P. McCOY,

        Appellee.

Case No.  5D15-4423

_____/

Opinion filed August 4, 2017

Appeal from the Circuit Court
for Seminole County,
Michael Rudisill, Judge.

David C. Knapp and James A. Coleman,
of James A. Coleman, P.A., Orlando, for
Appellant.

Jeffrey M. Byrd, of Jeffrey M. Byrd, P.A.,
Orlando, for Appellee.

WALLIS, J.

Jordon J. Rasinski appeals the final judgment finding him 100% liable for an automobile accident that caused permanent injury to Michael P. McCoy, for which the jury awarded McCoy $2,130,000 in damages. Rasinski argues the trial court erred by: (1) denying his motion for new trial due to opposing counsel's improper closing argument; (2) denying his motions for directed verdict, new trial, and remittitur on three grounds; and (3) denying his motion to determine set-off.

We affirm the trial court's denial of Rasinski's motion for new trial based on the alleged improper closing arguments to which he did not object.[1] We also affirm the trial court's denial of Rasinski's requested relief from the jury's award for pain and suffering and future medical expenses. We reverse the trial court's denials of Rasinski's motions for remittitur relating to lost earning capacity and to set off $25,037.56 from the final judgment, an amount for which McCoy's healthcare provider waived any right to subrogation or reimbursement.

**FACTS**

In January 2010, McCoy filed a complaint for negligence against Rasinski following an automobile accident in Seminole County. At trial in December 2013, McCoy testified that he worked in public utilities for twenty years prior to the subject accident. McCoy also previously owned a bait and tackle shop. He eventually left both of those jobs and began working as a plumber. In his first ten years as a plumber, McCoy performed "mostly commercial work," which he described as "physically demanding" and "hands-on."

McCoy testified that his hourly wage as a plumber fluctuated between $18 and $19.50. He further explained that, for the eighteen months preceding trial, he switched to "more of a quality control" position, performing only minor plumbing duties without any corresponding reduction in his pay. McCoy expressed a desire to work until the age of

---

[1] We emphasize that our affirmance on this issue should not be interpreted as condoning plaintiff's counsel's conduct in his closing argument. Rather, we find that the several unobjected-to comments do not rise to the level of egregiousness warranting a new trial as outlined by the Florida Supreme Court in Murphy v. International Robotic Systems, Inc., 766 So. 2d 1010, 1031 (Fla. 2000).

2

sixty-five, but cautioned, "If I get laid off or move to another job I don't believe I'll be able to work in [the plumbing] field anymore." McCoy elaborated as follows:

> I have a fear that I work for this present company that's been pretty good to me. Lots of times the way the construction has been in this economy, there's pretty close that I'll be laid off within another month or two because we really don't have much work and I don't believe I can go back to doing what I'm doing. . . . I don't believe I can go back to doing manual labor.

On cross-examination, McCoy explained that he began working for his current employer in December 2012—nearly three years after the accident. McCoy conceded that, in his employment application, he represented that he was physically capable of performing all plumbing duties. Following the accident, McCoy continued to work full time despite undergoing frequent chiropractic care.

The jury returned a verdict finding Rasinski 100% liable for the accident and awarding McCoy $2,130,000 in damages: $160,000 for past medical expenses; $10,000 for past lost earnings; $500,000 for future medical expenses; $260,000 for lost earning capacity; $200,000 for past pain and suffering; and $1,000,000 for future pain and suffering. Rasinski unsuccessfully challenged the award for lost earning capacity in motions for both new trial and remittitur, reasoning that McCoy offered no evidence from which the jury could calculate his damages with reasonable certainty. Rasinski also filed a motion to determine set-off, urging the trial court to reduce the judgment by several collateral source payments. The trial court denied Rasinski's motions pertaining to the award for lost earning capacity, reserving ruling on his request for set-offs.

In June 2014, the trial court entered a final judgment in accordance with the verdict. The trial court determined that, after applying some undisputed set-offs, McCoy was entitled to recover $2,030,000. Rasinski then moved to alter or amend the final judgment,

3

arguing the trial court failed to reduce the judgment by "the amount of all collateral source payments for which there is no obligation for reimbursement." The trial court denied Rasinski's motion regarding these additional set-offs.

## LOSS OF EARNING CAPACITY

We review a trial court's ruling on a motion for remittitur or new trial for an abuse of discretion. Castillo v. Bush, 902 So. 2d 317, 319 (Fla. 5th DCA 2005) (new trial); S & S Toyota, Inc. v. Kirby, 649 So. 2d 916, 921 (Fla. 5th DCA 1995) (remittitur). The applicable law on remittitur is found in section 768.043(1), Florida Statutes (2013), which provides:

> In any action for the recovery of damages based on personal injury . . . arising out of the operation of a motor vehicle, . . . wherein the trier of fact determines that liability exists on the part of the defendant and a verdict is rendered which awards money damages to the plaintiff, it shall be the responsibility of the court, upon proper motion, to review the amount of such award to determine if such amount is clearly excessive or inadequate in light of the facts and circumstances which were presented to the trier of fact. If the court finds that the amount awarded is clearly excessive or inadequate, it shall order a remittitur or additur, as the case may be. If the party adversely affected by such remittitur or additur does not agree, the court shall order a new trial in the cause on the issue of damages only.

Pursuant to section 768.043(1), "only when the parties agree with the trial court's amount of remittitur or additur will the remittitur or additur be enforced in lieu of a new trial." Waste Mgmt., Inc. v. Mora, 940 So. 2d 1105, 1109 (Fla. 2006).

The Florida Supreme Court has cautioned that a plaintiff may recover damages for loss of earning capacity only "when such damages are established with reasonable certainty." Auto-Owners Ins. Co. v. Tompkins, 651 So. 2d 89, 91 (Fla. 1995). Tompkins clarified that the plaintiff need not necessarily demonstrate a permanent injury, but "it is a

4

significant factor in establishing the reasonable certainty of future damages." Id. To establish a claim for loss of future earning capacity, the plaintiff must introduce "reasonably certain evidence that the capacity to labor has been diminished and that there is a monetary standard against which the jury can measure any future loss." Hubbs v. McDonald, 517 So. 2d 68, 69 (Fla. 1st DCA 1987) (quoting Long v. Publix Super Mkts., Inc., 458 So. 2d 393, 394 (Fla. 1st DCA 1984)). After the plaintiff introduces evidence sufficient to warrant an award for lost earning capacity, the jury should consider "all relevant factors including the plaintiff's age, health, habits, occupation, surroundings, and earnings before and after the injury." W.R. Grace & Co.-Conn. v. Pyke, 661 So. 2d 1301, 1302 (Fla. 3d DCA 1995) (citing Atl. Coast Line R.R. v. Ganey, 125 So. 2d 576 (Fla. 3d DCA 1960)).

In this case, McCoy offered evidence insufficient to support the jury's award for loss of earning capacity. McCoy's own trial testimony proved that he continued to work after the accident, earning between $18 and $19.50 per hour as a plumber—the same hourly wage he earned before the accident. In fact, McCoy did not even begin working for his employer at the time of trial until after the accident. McCoy's testimony questioning his future job security amounted to pure speculation and does not serve as a proper basis for the award of lost earning capacity. See Pyke, 661 So. 2d at 1303 ("The testimony that there was a possibility that [plaintiff] would lose his job was irrelevant, purely speculative and inappropriate."). In other words, McCoy failed to demonstrate that he "was completely disabled from further gainful employment" or that he "was unable to work to the same age [he] would have otherwise." Volusia Cty. v. Joynt, 179 So. 3d 448, 451–52 (Fla. 5th DCA 2015). Although the evidence established that McCoy suffered permanent injuries to his

neck and back from the accident, he nonetheless failed to introduce "a monetary standard against which the jury [could] measure any future loss." Hubbs, 517 So. 2d at 69.

Based on the foregoing, we find that the trial court abused its discretion by denying Rasinski's motions for remittitur and new trial as to loss of earning capacity. We reverse the portion of the final judgment awarding damages for loss of earning capacity and remand for the trial court to either enter a remittitur or grant a new trial solely on the issue of damages for loss of earning capacity. See § 768.043(1), Fla. Stat.; Truelove v. Blount, 954 So. 2d 1284, 1289–90 (Fla. 2d DCA 2007).

## COLLATERAL SOURCE SET-OFFS

We review de novo a trial court's ruling on a motion to determine set-off. Cornerstone SMR, Inc. v. Bank of Am., N.A., 163 So. 3d 565, 568 (Fla. 4th DCA 2015). Section 768.76, Florida Statutes (2013), provides, in pertinent part:

> (1) In any action to which this part applies in which liability is admitted or is determined by the trier of fact and in which damages are awarded to compensate the claimant for losses sustained, the court shall reduce the amount of such award by the total of all amounts which have been paid for the benefit of the claimant, or which are otherwise available to the claimant, from all collateral sources; however, there shall be no reduction for collateral sources for which a subrogation or reimbursement right exists. Such reduction shall be offset to the extent of any amount which has been paid, contributed, or forfeited by, or on behalf of, the claimant or members of the claimant's immediate family to secure her or his right to any collateral source benefit which the claimant is receiving as a result of her or his injury.
>
> . . . .
>
> (5) Any disputes between the claimant and the provider as to the actual amount of collateral sources recovered by the claimant from a tortfeasor shall be subject to determination by a court of competent jurisdiction. In determining the actual amount of collateral sources recovered, the court shall give

6

consideration to any offset in the amount of settlement or judgment for any comparative negligence of the claimant, limitations in the amount of liability insurance coverage available to the tortfeasor, or any other mitigating factors which the court deems equitable and appropriate under the circumstances.

This section abrogated the common law rule prohibiting reduction of damages from collateral source payments in an effort to "reduce insurance costs and prevent plaintiffs from receiving windfalls." Joerg v. State Farm Mut. Auto. Ins. Co., 176 So. 3d 1247, 1249 (Fla. 2015). For evidentiary purposes, "payments from collateral source benefits are not admissible because such evidence may confuse the jury with respect to both liability and damages." Id. (citing Sheffield v. Superior Ins. Co., 800 So. 2d 197, 203 (Fla. 2001)).

In this case, Rasinski requested that the trial court set-off, *inter alia*, $25,037.56 in payments furnished by McCoy's healthcare provider for which it released its lien and waived subrogation. The trial court denied Rasinski's motion on the basis that he could not argue for additional set-offs after presenting expert testimony to challenge the reasonableness of McCoy's medical bills, which resulted in the jury awarding a reduced award for past medical expenses. However, Rasinski did not request that the jury further reduce the award by the $25,037.56 at issue here. We find that this payment constitutes a collateral source under section 768.76(1) because McCoy does not dispute that the healthcare provider released its lien and waived subrogation. See § 768.76(1), Fla. Stat. ("[T]here shall be no reduction for collateral sources for which a subrogation or reimbursement right exists."). Accordingly, we reverse and remand for the trial court to enter a set-off in the amount of $25,037.56.[2]

---

[2] We affirm the trial court's rulings on Rasinski's additional set-off requests.

7

AFFIRMED in part; REVERSED in part; REMANDED for further proceedings.

PALMER and LAMBERT, JJ., concur.